UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| **PRUVIT VENTURES, LLC,**<br><br>Plaintiff,<br><br>V.<br><br>**AXCESS GLOBAL SCIENCES, LLC**<br><br>and<br><br>**FOREVERGREEN INTERNATIONAL, LLC,**<br><br>Defendants. | Civil Action No.:<br><br>_____<br><br><br>**Honorable** _____<br><br><br>**COMPLAINT** |

**PRUVIT VENTURES, LLC'S ORIGINAL COMPLAINT**

Plaintiff, PruvIt Ventures, LLC (hereinafter "Plaintiff" or "PruvIt") by its undersigned counsel, as for its Complaint seeking relief against Defendants Axcess Global Sciences, LLC (hereinafter "Axcess" individually or collectively with ForeverGreen "Defendants") and ForeverGreen International, LLC (hereinafter "ForeverGreen" or collectively with Axcess "Defendants"), alleges as follows:

I.      *General Summary of the Case*

1. This matter arises from desire to by Axcess to sell technology to the highest bidder, no matter the cost or harm to the parties seeking to make the technology available for use. Axcess Global is the exclusive licensee of ketone technology patented by the University of South Florida. Axcess stands to profit under the license based upon sublicensing of the technology to others via the receipt of a royalty and other consideration. After many rejected offers, Axcess found interested parties in ForeverGreen and PruvIt. Unfortunately, after PruvIt entered into a binding contract with Axcess, and relied upon that in creating a complete company concept, Axcess sought to strike what it believed would be a more lucrative deal with ForeverGreen. In the ultimate game of unfair competition, Axcess Global and ForeverGreen joined forced to shut PruvIt out of the market place and disparage its name to consumers. PruvIt seeks to ability to provide its customers with the technology for which it negotiated.

II.     *Parties*

2. Plaintiff: PruvIt Ventures, Inc., is a privately held Texas Corporation. Its principal officers are located at 901 Sam Rayburn Highway, Melissa, Texas 75454. Its registered agent for service of process is the undersigned counsel, Jenifer L. Grace.

3. Defendant Axcess Global Sciences, LLC, a Utah Limited Liability Company with is pace of business at 7810 South Prospector Drive, Salt Lake City, Utah

84121. Defendant can be served with process via their registered agent Wasatch-IP, A Professional Corporation located at 2825 Cottonwood Parkway, STE 500, Salt Lake City UT 84121.

4. Defendant ForeverGreen International, LLC is a Utah Limited Liability Company with its principal place of business located at 644 North 2000 West Lindon, UT 84042. ForeverGreen International, LLC can be served with process via their registered agent, Shane Manwaring located at 644 North 2000 West, Lindon UT 84042.

### III. *Jurisdiction and Venue*

5. Diversity Jurisdiction. Jurisdiction before this court is proper pursuant to 28 United States Code Section 1332, which provides for diversity jurisdiction. In this matter the parties are diverse with PruvIt being deemed a citizen of Texas while Axcess Global and ForeverGreen are deemed to be citizens of the state of Utah. See 28 U.S.C. § 1332. (2005).

6. Federal Question Jurisdiction. This Court also has jurisdiction in this matter pursuant to its federal question jurisdiction provided under 28 United States Code Section 1331. Plaintiffs are being a claim for relief pursuant to 15 U.S.C. § 1125, commonly known as the Lanham Act. Herein, Plaintiff asserts a cause of action under Section 43(a) for False Advertising.

7. Venue. Venue properly lies within this District pursuant to 28 United States Code Section 1391, wherein it provides: "A civil action may be brought in— (1) a judicial district in which any defendant resides, if all defendants are

residents of the State in which the District is located." 28 U.S.C. § 1391 (2011).   Subsection C provides that an entity with the capacity to sue or be sued in its common name under applicable law… shall be deemed to reside, if a defendant, in any judicial district in which the defendant is subject to the court's personal jurisdiction with respect to the civil action in question.  28 U.S.C. § 1391(c)(2) (2011).  Both Defendants are subject to personal jurisdiction within the State of Texas and this District.

8. Alternatively, venue is proper under subsection (b)(2) as a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.  The contract at issue was negotiated within this judicial district, the parties met within this district on multiple occasions, and the sales of product originates within this district.

### IV.   *Applicable Law*

9. The breach of contract claims asserted herein shall be construed pursuant to Florida law as provided in Section 14.1 of the Sublicense agreement.  However, the remaining causes of action should be construed pursuant to Texas laws.

### V.   *Factual Background*

10. The parties to this lawsuit began their relationship as a collaboration with to bring technology developed at the University of South Florida to the market place.

11. Ultimately, the parties separated ways, and PruvIt Licensed the technology from Axcess.

12. After learning that PruvIt had obtained the license to the technology, ForeverGreen renewed their interest therein.

13. Axcess with the assistance of ForeverGreen undertook to create a subterfuge in order to enter into what they perceive to be a more profitable agreement.

14. Before the Court are three companies, one of which asserts

## VI. Causes of Action Against Axcess Global, Inc.

### a. Breach of Non-Exclusive Sublicense Agreement.

15. To recover on a claim of breach of contract under laws of the State of Florida, a Plaintiff must show: (1) a valid contract, (2) a material breach, and (3) damages. *See Friedman v. New York Life Ins. Co.*, 985 So. 2d 56 (2008).

16. PruvIt and Axcess entered into a Non-Exclusive Sublicense Agreement effective December 31, 2014 ("Agreement"). The Agreement provided in part that PruvIt had a non-exclusive royalty bearing license to the Licensed Field and Licensed Territory to: "Make, have made, develop, used, lease, import, export, offer to sell, sell, and have sold Licensed Products and/or Licensed Processes."

17. Licensed Field under the Agreement is defined as "the field of product for human consumption with the exception of pharmaceuticals in the Multi-level Marketing Channel."

18. Licensed Territories under the agreement are defined as the United States and Canada.

19. Licensed Product and Licensed Process means: any product that is: (1) covered in whole or in part, (2) manufactured by using a process that is covered in whole or in part, (3) incorporates, utilizes or was developed utilizing Know-How or that is manufactured using Know-How that is covered by an issued, unexpired claim or pending claim contained in the Licensed Patents.

20. After the agreement was signed and Axcess Global represented that it was agreed to by the University of South Florida, PruvIt in reliance thereon undertook to develop products utilizing the Licensed Patents.

21. The Licensed Patents included the patent with provisional patent Nos. 61/803,203 and 61/926,664.

22. Patents 61/803,203 and 61/926,664 related to the use of ketogenic precursors (medium chain triglycerides and mineral salts of beta-hydroxybutyrate) to quickly elevate and sustain levels of ketone bodies in the blood to assist the body's transition into nutritional ketosis.

23. The Licensed Patents further provide that metabolism of ketone bodies is associated with anticonvulsant effects, enhanced brain metabolism, improvement in cognitive and physical performance.  Ketone supplementation is also associated with beneficial impacts on physical, cognitive health, psychological health, warfighter resilience and a long-term

impact on health with respect to common avoidable diseases such as obesity, neurodegenerative diseases, diabetes and cancer.

24. PruvIt was to receive a single serve powder formula utilizing the Licensed Technology within five days of the signing of the agreement. PruvIt did not receive a formula that utilized the Licensed Technology within the time period agreed.

25. Axcess Global, then also breached the Agreement by failing to adequately license the Technology to PruvIt, and thereafter licensing the Technology to ForeverGreen for use within the Licensed Territories.

26. While disputing the existence of the contract, Axcess wrongfully sent a notice of termination to PruvIt, and embroiled themselves in a subterfuge between PruvIt and ForeverGreen.

27. PruvIt has expended considerable resources to utilize the technology licensed. Such resources are monetary and equitable in nature. PruvIt been damages as a result of the loss of rights under the license agreement and wrongful termination. Monetary damages are likely to exceed $3,000,000 in damages.

   b. **Fraud**

28. In Texas, the elements of Common Law Fraud are: (1) a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false, or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party

should act upon it; (5) the party acted in reliance on the representations; and (6) the party thereby suffered injury. *In re First Merit Bank, N.A.*, 52 S.W.2d 749,758 (Tex.2001).

29. Axcess Global committed Fraud by misrepresenting the status of negotiations with ForeverGreen, and the nature of its relationship with ForeverGreen.

30. Axcess, through its agent Rob Rogers misrepresented in a meeting between he and Brian Underwood of PruvIt in Dallas that all negotiations with ForeverGreen had ceased, and Axcess had the authority to License the Products and Processes in the Licensed Territory.

31. Axcess in emails from Gary Millet to Brian Underwood and others also falsely represented the nature of the Licensed Patents included the right associate nutritional ketosis with the possibility of weight loss.

   c. **Promissory Estoppel (pleaded in the alternative)**

32. Pleading in the alternative to its Breach of Contract cause of action, Plaintiff pleads that it is entitled to Promissory Estoppel. To establish promissory estoppel, Plaintiff must show: (1) Axcess made a promise to PruvIt; (2) PruvIt reasonably and substantially relied upon the promise to its detriment; (3) PruvIt's reliance was foreseen by Axcess; and (4) injustice can be avoided only by enforcing the promise of Axcess Global.

33. Axcess promised to PruvIt that it had the right to license the USF technology and that the technology was significant to the general public as a result of its properties with respect to a weight loss campaign.

34. PruvIt relied on the promise of Axcess about the nature of the Licensed Patents and that it would not undermine PruvIt's ability to utilize those patents.

35. PruvIt relied upon the promises of Axcess Global to its detriment in that it has spent countless hours and monetary resources developing a product and marketing strategy to sell the product. PruvIt proceeded with the belief that its development would not undermined by other parties.

## VII. Causes of Action Against Forever Green International, Inc.

### a. Fraud

36. In Texas, the elements of Common Law Fraud are: (1) a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false, or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representations; and (6) the party thereby suffered injury. *In re First Merit Bank, N.A.*, 52 S.W.2d 749,758 (Tex.2001).

37. ForeverGreen committed fraud through its misrepresentations concerning its dealings with Axcess Global.

  b. **Business Disparagement**

34. ForeverGreen published disparaging comments about PruvIt and its rights to the Licensed Technology and Plaintiff's economic interests and ability to provide the technology to its sales force.

35. ForeverGreen's statements about its access to the patent inventor and the exclusivity of its rights as opposed to those of PruvIt are false and were published with malice. The false statements were repeated online and through various media without a privilege to do so.

36. Publication of ForeverGreen's false statements caused PruvIt special damages.

  c. **Tortious Interference with Non-Exclusive Sublicense Agreement.**

38. Forever Green was well aware that PruvIt had a valid and existing contract with Axcess.

39. Forever Green willfully interfered with that contract and encouraged Axcess to wrongfully terminate its contract with Axcess so that it could obtain rights that are lawfully those of PruvIt.

40. Forever Green then undertook to assert that PruvIt did not have rights to the Licensed Technology that Forever Green was fully aware were their rights. With the misrepresentations about the rights of PruvIt, ForeverGreen undertook a pattern and practice of disparagement.

41. ForeverGreen's interference with the contract between PruvIt and Axcess has caused PruvIt substantial harm and monetary damages.

    d. **Lanham Act Violations**

42. The ForeverGreen made a false or at the very least a misleading statement of fact in advertising regarding is exclusive rights to the licensed technology and endorsement of its product by the patent author;

43. The false statement deceived or had the capacity to deceive a substantial segment of the audience to which it was directed;

44. This deception was material, in that it was likely to influence the purchasing decision of ForeverGreen and PruvIt customers;

45. ForeverGreen is a known international company with business in the United Stated and has caused its goods to enter interstate commerce;

46. Plaintiff has been injured as a result of ForeverGreen's false statements.

## VIII. *Trial by Jury Requested.*

**47.** Plaintiff seeks a trial by jury on all issues triable to a jury.

## IX. *Relief Requested*

For the above states reasons, Plaintiff respectfully requests that Defendants be cited to appear and that Plaintiff be awarded a judgment against Defendants jointly and severally for the following:

    1. Monetary Damages

        a. Expectancy Damages

        b. Reliance Damages

    c. Lost Profits

    d. Loss of Credit

    e. Loss of Goodwill

    f. Exemplary Damages

    g. Court Costs

    h. Attorneys' Fees

2. Equitable Damages

    a. Specific Performance of the Non-Exclusive Sublicense Agreement

Respectfully submitted,

/s/ Jenifer L. Grace____
**JENIFER L. GRACE**
State Bar No. 24026777
Attorney-in-Charge
The Grace Firm, PLLC
901 Sam Rayburn Highway
Melissa, Texas 75434
(972) 439-1750    Telephone
(800) 335-2901    Facsimile
jenifer.grace@gracefirm.com
**ATTORNEY FOR PLAINTIFF**