# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | |
|---|---|
| PRUVIT VENTURES, INC., <br><br> Plaintiff, <br><br> vs. <br><br> AXCESS GLOBAL SCIENCES, LLC, and FOREVERGREEN INTERNATIONAL, LLC, <br><br> Defendants. | Civil Action No. 4:15-cv-00571-ALM-CAN <br><br><br> **FOREVERGREEN INTERNATIONAL, LLC'S ANSWER, COUNTERCLAIMS AND THIRD-PARTY COMPLAINT** <br><br><br> Honorable Judge Amos L. Mazzant |
| FOREVERGREEN INTERNATIONAL, LLC, <br><br> Counterclaimant and Third-party Plaintiff, <br><br> vs. <br><br> PRUVIT VENTURES, INC., LACORE LABS, LLC, TERRY LACORE, BRIAN UNDERWOOD, CHRISTOPHER N. HARDING, BILLY FUNK, RAY DIETRICH, ROBERT DEBOER, and MICHAEL RUTHERFORD, <br><br> Counterclaim and Third-party Defendants. | |

Defendant ForeverGreen International, LLC ("ForeverGreen") answers the Amended Complaint of Pruvit Ventures, Inc. as follows, with paragraph numbers corresponding to those found in the Amended Complaint:

1.      ForeverGreen admits that Axcess Global Sciences, LLC ("AGS") is the exclusive licensee of ketone technology patented by the University of South Florida.  ForeverGreen is without knowledge or information about allegations regarding dealings of AGS and Pruvit found in paragraph 1 and on that basis denies the same. ForeverGreen denies the remaining allegations in paragraph 1 that pertain to ForeverGreen.

2.      ForeverGreen is without knowledge or information sufficient to form a belief as to the allegations of paragraph 2 and on that basis denies the allegations of paragraph 2 of the Amended Complaint.

3.      ForeverGreen is without knowledge or information sufficient to form a belief as to the allegations of paragraph 3 and on that basis denies the same.

4.      Admitted.

5.      ForeverGreen is without knowledge or information sufficient to form a belief as to the allegations of paragraph 5 and on that basis denies the same.

6.      ForeverGreen admits that this Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1331.  ForeverGreen denies the remaining allegations of paragraph 6.

7.      ForeverGreen is without knowledge or information sufficient to form a belief as to the allegations of paragraph 7 and on that basis denies the same.

8.      ForeverGreen is without knowledge or information sufficient to form a belief as to the allegations of paragraph 8 and on that basis denies the same.

9.      The allegations of paragraph 9 of the Amended Complaint consist of a legal conclusion to which no response is required.  To the extent a response is required, ForeverGreen denies the allegations in paragraph 9 of the Amended Complaint.

10.    Admitted.

11.    Admitted.

12.    Denied

13.    ForeverGreen admits that LaCore, Williams, and Rogers had discussions in May of 2014.  ForeverGreen denies the remaining allegations of paragraph 13.

14.    ForeverGreen admits a revised product was needed.  ForeverGreen denies the remaining allegations of paragraph 14.

15.    Admitted.

16.    ForeverGreen is without knowledge or information sufficient to form a belief as to the allegations of paragraph 17 and on that basis denies the same.

17.    ForeverGreen is without knowledge or information sufficient to form a belief as to the allegations of paragraph 17 and on that basis denies the same.

18.     ForeverGreen is without knowledge or information sufficient to form a belief as to the allegations of paragraph 18 and on that basis denies the same.

19.    ForeverGreen admits that as of July 3, 2014, it was interested in working jointly with LaCore; however, LaCore was never to have world-wide distribution.  ForeverGreen denies the remaining allegations of paragraph 19.

20.    ForeverGreen is without knowledge or information sufficient to form a belief as to the allegations of paragraph 20 and on that basis denies the same.

21.    Denied.

22.    ForeverGreen admits that it was working with AGS and Lacore in July, 2014. ForeverGreen denies the remaining allegations of paragraph 22 of the Amended Complaint.

23.     ForeverGreen admits that Millet and Rogers stated in a July 18, 2014 email to Williams and LaCore: "[W]e are now opening up communications with those companies again immediately.  We wish you both great success."  ForeverGreen denies the remaining allegations of paragraph 23.

24.     ForeverGreen is without knowledge or information sufficient to form a belief as to the allegations of paragraph 24 and on that basis denies the same.

25.     ForeverGreen admits that Williams sent an email to Rogers on July 23, 2014. ForeverGreen denies the remaining allegations of paragraph 25.

26.     ForeverGreen admits that on July 28, 2014 Lacore shared an email chain with Williams. ForeverGreen denies the remaining allegations of paragraph 26.

27.     ForeverGreen admits that it had discussions with AGS after July 28, 2014. ForeverGreen denies the remaining allegations of paragraph 27.

28.     ForeverGreen is without knowledge or information sufficient to form a belief as to the allegations of paragraph 28 and on that basis denies the same.

29.     ForeverGreen is without knowledge or information sufficient to form a belief as to the allegations of paragraph 29 and on that basis denies the same.

30.     ForeverGreen is without knowledge or information sufficient to form a belief as to the allegations of paragraph 30 and on that basis denies the same.

31.     ForeverGreen is without knowledge or information sufficient to form a belief as to the allegations of paragraph 31 and on that basis denies the same.

32.     ForeverGreen is without knowledge or information sufficient to form a belief as to the allegations of paragraph 32 and on that basis denies the same.

33.     ForeverGreen is without knowledge or information sufficient to form a belief as to the allegations of paragraph 33 and on that basis denies the same.

34.     ForeverGreen is without knowledge or information sufficient to form a belief as to the allegations of paragraph 34 and on that basis denies the same.

35.     ForeverGreen is without knowledge or information sufficient to form a belief as to the allegations of paragraph 35 and on that basis denies the same.

36.     ForeverGreen is without knowledge or information sufficient to form a belief as to the allegations of paragraph 36 and on that basis denies the same.

37.     Denied.

38.     Denied.

39.     ForeverGreen is without knowledge or information sufficient to form a belief as to the allegations related to discussions between AGS and Pruvit. ForeverGreen denies the remaining allegations of paragraph 39.

40.     Denied.

41.     ForeverGreen admits that on or about March 18, 2015, Williams contacted AGS about moving forward to launch a product with AGS's ketone technologies.  ForeverGreen denies the remaining allegations of paragraph 41.

42.     ForeverGreen is without knowledge or information sufficient to form a belief as to the allegations of paragraph 42 and on that basis denies the same.

43.     ForeverGreen is without knowledge or information sufficient to form a belief as to the allegations of paragraph 43 and on that basis denies the same.

44.    ForeverGreen admits that Lacore, Underwood, Williams, and Clayton met in Plano Texas during the week of March 23, 2015. ForeverGreen denies the remaining allegations of paragraph 44.

45.    Denied.

46.    ForeverGreen admits that it Lacore, Clayton, and Manwaring participated in a conference call on April 1, 2015. ForeverGreen denies the remaining allegations of paragraph 46.

47.    ForeverGreen admits that ForeverGreen and Pruvit began joint negotiations with AGS, sending AGS a draft term sheet that was "for agreements with AGS for both FG and Pruvit." ForeverGreen denies the remaining allegations of paragraph 47.

48.    ForeverGreen admits that Williams sent an email to LaCore on April 10, 2015. ForeverGreen denies the remaining allegations of paragraph 48.

49.    ForeverGreen admits it sent an email to AGS on April 10, 2015. ForeverGreen denies the remaining allegations of paragraph 49.

50.    ForeverGreen admits it declined the counteroffer received from AGS. ForeverGreen denies the remaining allegations of paragraph 50.

51.    Admitted.

52.    ForeverGreen is without knowledge or information sufficient to form a belief as to the allegations of paragraph 52 and on that basis denies the same.

53.    ForeverGreen admits it continued to look at methods to work with Pruvit. ForeverGreen denies the remaining allegations of paragraph 53.

54.    Denied.

55.    Admitted.

56.    ForeverGreen admits it made this statement based on its understanding of the contractual terms with AGS and University of South Florida.

57.    Denied.

58.    Denied.

59.    Denied.

60.    The allegations of paragraph 60 of the Amended Complaint consist of a legal conclusion to which no response is required.  To the extent a response is required, ForeverGreen denies the allegations in paragraph 60 of the Amended Complaint.

61.    ForeverGreen is without knowledge or information sufficient to form a belief as to the allegations of paragraph 61 and on that basis denies the same.

62.    ForeverGreen is without knowledge or information sufficient to form a belief as to the allegations of paragraph 62 and on that basis denies the same.

63.    ForeverGreen is without knowledge or information sufficient to form a belief as to the allegations of paragraph 63 and on that basis denies the same.

64.    ForeverGreen is without knowledge or information sufficient to form a belief as to the allegations of paragraph 64 and on that basis denies the same.

65.    ForeverGreen is without knowledge or information sufficient to form a belief as to the allegations of paragraph 65 and on that basis denies the same.

66.    ForeverGreen is without knowledge or information sufficient to form a belief as to the allegations of paragraph 66 and on that basis denies the same.

67.    ForeverGreen admits that provisional patent applications nos. 61/803,203 and 61/926,664 related to the use of ketogenic precursors (medium chain triglycerides and mineral

salts of beta-hydroxybutyrate) to quickly elevate and sustain blood ketone levels.  ForeverGreen denies the remaining allegations of paragraph 67 of the Amended Complaint.

68.     ForeverGreen is without knowledge or information sufficient to form a belief as to the allegations of paragraph 68 and on that basis denies the same.

69.     ForeverGreen is without knowledge or information sufficient to form a belief as to the allegations of paragraph 69 and on that basis denies the same.

70.     ForeverGreen is without knowledge or information sufficient to form a belief as to the allegations of paragraph 70 and on that basis denies the same.

71.     ForeverGreen is without knowledge or information sufficient to form a belief as to the allegations of paragraph 71 and on that basis denies the same.

72.     ForeverGreen is without knowledge or information sufficient to form a belief as to the allegations of paragraph 72 and on that basis denies the same.

73.     The allegations of paragraph 73 of the Amended Complaint consist of a legal conclusion to which no response is required.  To the extent a response is required, ForeverGreen denies the allegations in paragraph 73 of the Amended Complaint.

74.     ForeverGreen is without knowledge or information sufficient to form a belief as to the allegations of paragraph 74 and on that basis denies the same.

75.     ForeverGreen is without knowledge or information sufficient to form a belief as to the allegations of paragraph 75 and on that basis denies the same.

76.     ForeverGreen is without knowledge or information sufficient to form a belief as to the allegations of paragraph 76 and on that basis denies the same.

77.     The allegations of paragraph 77 of the Amended Complaint consist of a legal conclusion to which no response is required.  To the extent a response is required, ForeverGreen denies the allegations in paragraph 77 of the Amended Complaint.

78.     ForeverGreen is without knowledge or information sufficient to form a belief as to the allegations of paragraph 78 and on that basis denies the same.

79.     The allegations of paragraph 79 of the Amended Complaint consist of a legal conclusion to which no response is required.  To the extent a response is required, ForeverGreen is without knowledge or information sufficient to form a belief as to the allegations of paragraph 79 and on that basis denies the same.

80.     ForeverGreen is without knowledge or information sufficient to form a belief as to the allegations of paragraph 80 and on that basis denies the same.

81.     ForeverGreen is without knowledge or information sufficient to form a belief as to the allegations of paragraph 81 and on that basis denies the same.

82.     ForeverGreen is without knowledge or information sufficient to form a belief as to the allegations of paragraph 82 and on that basis denies the same.

83.     The allegations of paragraph 83 of the Amended Complaint consist of a legal conclusion to which no response is required.  To the extent a response is required, ForeverGreen is without knowledge or information sufficient to form a belief as to the allegations of paragraph 83 and on that basis denies the same.

84.     Denied.

85.     Denied.

34.[1]    Denied

---

[1] Pruvit has mislabeled three paragraphs between paragraphs 85 and 86.

35.     Denied.

36.     Denied.

86.     Denied.

87.     Denied.

88.     Denied.

89.     Denied.

90.     Denied.

91.     Denied.

92.     Denied.

93.     Admitted.

94.     Denied.

95.     Denied.

96.     The allegations of paragraph 96 of the Amended Complaint consist of a legal

conclusion to which no response is required.  To the extent a response is required, ForeverGreen

is without knowledge or information sufficient to form a belief as to the allegations of paragraph

96 and on that basis denies the same.

Relief Requested

ForeverGreen denies that Pruvit is entitled to any of the relief it requests.

**Affirmative Defenses**

First Affirmative Defense

Each of Pruvit's claims fails to state facts sufficient to constitute a cause of action upon

which relief may be granted against ForeverGreen.

<u>Second Affirmative Defense</u>

The Amended Complaint and all claims asserted therein are barred to the extent that Pruvit has agreed and consented to the actions complained of in the Amended Complaint.

<u>Third Affirmative Defense</u>

Some or all of Pruvit's claims are subject to offset, and/or recoupment.

<u>Fourth Affirmative Defense</u>

Pruvit's claims are barred based on the doctrine of unclean hands.

<u>Fifth Affirmative Defense</u>

Pruvit's claims are barred by the doctrines of release and/or novation.

<u>Sixth Affirmative Defense</u>

Pruvit's claims are barred by Pruvit's own fraud and/or misrepresentation.

<u>Seventh Affirmative Defense</u>

Pruvit's fraud claims are barred because ForeverGreen's alleged misrepresentations were true.

<u>Eighth Affirmative Defense</u>

Pruvit's fraud claims are barred because ForeverGreen made no false representations that were material, ForeverGreen made no false representations with knowledge of their falsity, ForeverGreen made no false representations with intent to induce Pruvit's reliance on such statements, and Pruvit did not justifiably rely on any representations, if any, made by ForeverGreen.

<u>Ninth Affirmative Defense</u>

Pruvit's Lanham Act claims fail because Pruvit has no standing to bring such claims because it is not likely to be damaged by the complained-of conduct, because any marketing

statements made by ForeverGreen are true, and because any marketing statements made by ForeverGreen are not relied on by the consuming public and/or have not been seen by the consuming public.

Tenth Affirmative Defense

Pruvit's claims are barred in whole or in part by Pruvit's failure to mitigate its damages, if any.

Eleventh Affirmative Defense

Pruvit's claims are barred by the doctrines of laches, waiver, estoppel and/or equitable estoppel.

Twelfth Affirmative Defense

Pruvit's claims fail because Pruvit has suffered no damages or injury.

Thirteenth Affirmative Defense

Pruvit may not recover damages against ForeverGreen because there is no causation between the alleged wrongdoing by ForeverGreen and any damages allegedly suffered by Pruvit.

Fourteenth Affirmative Defense

To the extent Pruvit seeks equitable relief, it is not entitled to such equitable relief because the injury or damages suffered by Pruvit are not irreparable.

Fifteenth Affirmative Defense

To the extent Pruvit seeks equitable relief, it is not entitled to such equitable relief because any injury suffered by Pruvit is compensable by money damages, if any.

Sixteenth Affirmative Defense

Pruvit is not entitled to recover punitive or exemplary damages because at all times ForeverGreen acted in good faith and without malice.

12

Seventeenth Affirmative Defense

The Amended Complaint against ForeverGreen is filed in bad faith and constitutes a malicious abuse of process.

Eighteenth Affirmative Defense

ForeverGreen alleges that it is presently without knowledge or information sufficient to form a belief whether it may have additional, yet unasserted, affirmative defenses.  ForeverGreen therefore reserves the right to assert additional affirmative defenses if it acquires knowledge or information supporting such defenses.

**COUNTERCLAIMS AND THIRD-PARTY COMPLAINT**

ForeverGreen, for counterclaims against Pruvit Ventures, Inc., LaCore Labs, LLC, Terry LaCore, Brian Underwood, Christopher Harding, Billy Funk, Ray Dietrich, Michael Rutherford, and Robert Deboer, alleges as follows:

**The Parties**

1.      Cross-complainant ForeverGreen is a Utah Limited Liability Company with its principal place of business located in Lindon, Utah.

2.      Upon information and belief, Pruvit Ventures, Inc. ("Pruvit") is a Texas corporation with its principal place of business in Melissa, Texas.

3.      Upon information and belief, LaCore Labs, LLC is a Texas limited liability company with its principal place of business in Melissa, Texas

4.      Upon information and belief, Terry LaCore ("LaCore") is an individual residing in Melissa, Texas and is a principal of Pruvit.

5.      Upon information and belief, Brian Underwood ("Underwood") is an individual residing in Louisville, Kentucky and is a principal of Pruvit.

6.      Upon information and belief, Christopher N. Harding ("Harding") is an individual residing in Louisville, Kentucky and is a principal of Pruvit.

7.      Upon information and belief, Billy Funk is an individual residing in San Diego, California.

8.      Upon information and belief, Ray Dietrich is an individual residing in Murrieta, California.

9.      Upon information and belief, Robert Deboer is an individual residing in Summerville, South Carolina.

10.      Upon information and belief, Michael Rutherford is an individual residing in Carlsbad, California.

## Jurisdiction, Venue and Joinder

11.      This Action arises under the Patent Laws of the United States of America, Title 35, United States Code and unfair competition under the Lanham Act, Title 15 United States Code.  This Court has jurisdiction pursuant to the provisions of 28 U.S.C. §§ 1331, 1338, 2201, and 2202.

12.      This Court has related claim jurisdiction over state law claims pursuant to 28 U.S.C. § 1338(b) and 28 U.S.C. § 1367.

13.      Joinder of Billy Funk and Ray Dietrich (collectively, "Distributors") is proper under Federal Rule of Civil Procedure 20(a)(B) as a question of law or fact common to all defendants will arise in the action.

14.      Joinder of Robert Deboer and Micahel Rutherford is proper under Rule 20(a)(B) as a question of law or fact common to all defendants will arise in the action.

14

15.     Upon information and belief, Pruvit has transacted business in the Eastern District of Texas, has delivered or caused to be delivered its infringing products in the Eastern District of Texas, thereby committing acts of infringement in the Eastern District of Texas, and continues to commit acts of infringement in the Eastern District of Texas.

16.     Upon information and belief, LaCore Labs has transacted business in the Eastern District of Texas, has delivered or caused to be delivered its infringing products in the Eastern District of Texas, thereby committing acts of infringement in the Eastern District of Texas, and continues to commit acts of infringement in the Eastern District of Texas.

17.     Upon information and belief, LaCore, Underwood, and Harding have conspired together to create Pruvit and to deliver infringing products in the Eastern District of Texas thereby committing acts of infringement in the Eastern District of Texas.

18.     This Court has personal jurisdiction over the Distributors because their contracts with Pruvit require continuous and extensive contacts with Texas, providing minimum contacts, those contacts are responsible for the breach of the Distributor's contracts with ForeverGreen, making the exercise of jurisdiction fair and reasonable.

19.     This Court also has personal jurisdiction over the Distributors because they breached their agreements with ForeverGreen in Texas by contracting with Pruvit, thus subjecting them to personal jurisdiction in Texas.

20.     This Court also has personal jurisdiction over Robert Deboer and Michael Rutherford because they are committing acts of infringement in Texas and because their contracts with Pruvit require continuous and extensive contacts with Texas, providing minimum contacts.

15

21.     This Court has subject matter jurisdiction over ForeverGreen's claims against the Distributors under 28 U.S.C. § 1367 because ForeverGreen's claims against the Distributor's arise from the same set of operative facts as ForeverGreen's claims against Pruvit, and form part of the same case or controversy.

22.     Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b), (c), and 1400(b)

## Background

23.     Axcess Global, LLC ("Axcess Global") is a Utah company that specializes in bringing products to the mass market.

24.     In early 2013, Axcess Global began exploring the possibility of obtaining rights in a technology developed at the University of South Florida for rapidly inducing a state of ketosis in mammals.  Ketosis is a metabolic state where most of the body's energy supply comes from ketone bodies in the blood, in contrast to a state of glycolysis where blood glucose provides most of the energy.  Medical literature supports ketosis as positively influencing those with metabolic syndrome, diabetes, chronic neurodegeneration (Alzheimer's, Parkinson's, dementia, ALS, etc.), traumatic brain injury, epilepsy, and other maladies.

25.     On July 13, 2013, Axcess Global signed an exclusive license agreement (the "Vlahakos License") with Dr. Vic Vlahakos of Houston, Texas for his patent, U.S. Patent no. 6,613,356, which claims, inter alia, the use of beta-hydroxybutyrate salts for weight loss ("the Vlahakos patent"). The Vlahakos patent and Dr. Vlahakos's rights in the Vlahakos patent were subsequently transferred to VND Butyrate, LLC, a Texas limited liability company.

26.     On September 4, 2013, after months of negotiation, Axcess Global signed an exclusive license agreement (the "USF License") with the University of South Florida Research

Foundation, Inc. ("USF") for its patent-pending technology relating to the use of a nutritional supplement including a medium chain fatty acid ("MCT oil") and a beta-hydroxybutyrate salt (BHB salt) which would assist in inducing and prolonging a state of ketosis in mammals.

27.    The USF patent application, later filed internationally, has now been granted by the United States Patent and Trademark Office as U.S. Patent No. 9,138,420 (the "USF patent").

28.    The USF patent names as a co-inventor Dominic D'Agostino, Ph.D, an assistant professor in the department Molecular Pharmacology and Physiology in the Morsani College of Medicine at the University of South Florida.

**29.**    Axcess Global's rights in the USF License and the Vlahakos License were assigned to a wholly owned entity, Axcess Global Sciences, LLC ("AGS").

## ForeverGreen

30.    ForeverGreen is a Utah-based network marketing company that has been operating since 2003.  In late 2013 and throughout the beginning of 2014, ForeverGreen and Axcess Global were engaged in negotiations for the sub-licensing by ForeverGreen of the USF and Vlahakos technology and introduction by ForeverGreen of a product based on this technology through ForeverGreen's network of independent distributors

31.    On July 7, 2015, AGS and ForeverGreen executed a "Sublicense Agreement re USF Technology" (the "FG/USF Sublicense") granting ForeverGreen an exclusive sublicense to the USF Patent in the multi-level marketing channel.  Because Pruvit had asserted that it had rights to the USF Patent in the multi-level marketing channel (notwithstanding the fact that USF had never approved its license and Pruvit's own failure to remedy its numerous breaches of the insurance provisions of the Pruvit License), the parties to the FG/USF Sublicense made the

exclusive license grant "subject to" any rights that Pruvit "may have as a non-exclusive licensee."

32.    On that same day, July 7, 2015, AGS and ForeverGreen also executed an "Exclusive Sublicense Agreement re Vlahakos Technology" (the "FG/Vlahakos Sublicense") granting ForeverGreen an exclusive sublicense to the Vlahakos Patent in the multi-level marketing channel.

33.    Upon information and belief, Pruvit has never received or signed any agreement to receive any license for the Vlakahos Patent.

34.    Notwithstanding that the Pruvit Sublicense was never rendered effective and binding and/or was terminated due to Pruvit's failure to cure its numerous breaches, and Pruvit never received a license for the Vlakahos Patent, in early June of 2015 Pruvit began marketing and offering for sale a product under the names "Keto-OS" and "Keto-COS" (hereafter the "Pruvit Infringing Products").

35.    Upon information and belief, the Pruvit Infringing Products are manufactured in this district by LaCore Labs under the direct supervision of LaCore.

**LaCore**

36.    In 2014 ForeverGreen introduced Axcess Global to Terry LaCore.  Upon information and belief, LaCore is the founder and CEO of a network marketing company operating under the name bHIP.

37.    For a number of months thereafter, LaCore, on behalf of bHIP, was engaged in discussions with ForeverGreen and Axcess Global about the possibility of launching a liquid ketogenic supplement based on the USF and Vlahakos technology through bHIP concurrent with the ForeverGreen launch.

**Underwood and Pruvit**

38.     In about October of 2014, LaCore introduced Axcess Global to Underwood and Harding.  LaCore, Underwood, and Harding then engaged in discussions with Axcess Global to sub-license the USF technology from Axcess Global and introduce a product based on the USF technology through a new network marketing company that LaCore and Underwood would own and operate.  In connection with those discussions, Underwood signed a non-disclosure agreement with Axcess Global.

39.     In November of 2014, Axcess Global formed Axcess Global Sciences, LLC ("AGS"), an entity wholly owned by Axcess Global.  Axcess Global's rights in the USF License and the Vlahakos License were then assigned to Axcess Global Sciences, LLC ("AGS").

40.     On November 7, 2014, AGS signed a non-binding Term Sheet (the "Pruvit Term Sheet") with "NEWCO Inc." (later Pruvit) that expressed the parties' non-binding intentions of terms pursuant to which AGS would license patent rights and know how to Pruvit.  The Pruvit Term Sheet included a binding confidentiality provision protecting AGS's confidential information.

41.     On December 31, 2014, Axcess Global and Pruvit signed a "Non-exclusive Sublicense Agreement" (the "Pruvit Sublicense") which included provisions for the sub-licensing of the USF patent to Pruvit.  The title of the Pruvit Sublicense, the heading on the license grant clause and the language in the license grant all specified that the Pruvit Sublicense was "non-exclusive."

42.     The Pruvit Sublicense, to become effective and binding, required the approval of USF and included a signature line for USF to express that approval.  Also, virtually all of the rough drafts of the Pruvit Sublicense included a statement at the top of the first page to this effect.  USF never approved or executed the Pruvit Sublicense.

43.     Upon information and belief, Pruvit never contacted USF to obtain approval for the Pruvit Sublicense, nor did USF ever notify Pruvit that USF had approved the Pruvit Sublicense.

44.     In subsequent discussions between AGS and Pruvit, AGS learned that Pruvit was planning a product launch, apparently in reliance on rights purportedly obtained in the Pruvit Sublicense.

45.     When AGS put Pruvit on notice that it still needed to obtain the approval of USF, Pruvit responded: "Nothing in the [sublicense] agreement makes approval of USF a requirement for its effectiveness."  Pruvit further advised AGS that "PruvIt plans to move forward" and threatened litigation against AGS.  This was the first of many actions of Pruvit indicating its willingness to proceed with its own plans, regardless of its lack of rights from AGS.

46.     AGS pointed Pruvit to the express language in the Pruvit License requiring USF's approval and suggested that Pruvit work with ForeverGreen to work out a plan for operating under ForeverGreen to launch a ketone product using AGS's technology.

47.     Immediately thereafter, in mid-March, 2015, Pruvit discontinued communications with AGS.

48.     AGS subsequently learned from third parties that Pruvit was continuing to act as though the Pruvit Sublicense was an enforceable contract.  Thus, AGS, while preserving its right

20

to challenge the enforceability of the Pruvit Sublicense, put Pruvit on notice that it was breaching the Pruvit Sublicense for failure to maintain appropriate insurance coverage.

49.     Specifically, in May of 2015, AGS gave Pruvit written notice of breach of section 12.2 of the Pruvit Sublicense, which states in part:

> Licensee warrants that it now maintains and will continue to maintain liability insurance coverage [of no] less than $3 million in the aggregate, $1 million per occurrence, and that such insurance coverage lists Licensor and its affiliates, USF, its Affiliates, its Trustees, the Florida Board of Governors, and the inventors of the Licensed Patents as additional insureds.

50.     Under the terms of section 9.3 of the Pruvit Sublicense, AGS can terminate the Pruvit Sublicense if Pruvit is in breach of any provision, with termination to take place thirty (30) days after written notice from AGS, unless Pruvit remedies the problem in that 30-day period.

51.     In response to AGS's assertions that Pruvit was not in compliance with the insurance provisions of the Pruvit Sublicense, Pruvit stated that "Insurance is not necessary until such time as PruvIt is conducting business." Pruvit's statement directly contradicted the express requirement Pruvit had agreed to in the Pruvit Sublicense.

52.     On June 30, 2015, well beyond the 30-day cure period provided in section 9.3 of the Pruvit Sublicense, Pruvit provided AGS a copy of a Certificate of Liability Insurance. The Pruvit Certificate of Liability Insurance was dated June 30, 2015, provided for aggregate coverage of only $2 million and did not list as "additional insureds" any of entities required by section 12.2 of the Pruvit Sublicense with the exception of AGS.

53.     The Pruvit Sublicense, if any, expired by its terms 30 days after AGS's written notice of breach and Pruvit's failure to cure. Notwithstanding the failure of Pruvit to establish

any contract right and notwithstanding automatic termination, AGS provided Pruvit with a formal notice of termination of the Pruvit Sublicense by letter dated July 22, 2015.

### Deboer and Rutherford

54.    Deboer and Rutherford are top-level distributors for Pruvit. Deboer and Rutherford's marketing and sales of Pruvit's KETO//OS product constitute infringement of the USF Patent and the Vlahakos Patent.

### The Distributors

55.    ForeverGreen is a network marketing company based in Utah.

56.    Upon information and belief, Pruvit is a network marketing company based in Melissa, Texas, and competes directly with ForeverGreen in the network marketing industry.

57.    Billy Funk and Ray Dietrich (collectively, "Distributors") were formerly career placement members for ForeverGreen.

58.    Forevergreen is a network marketing company that operates and distributes certain products through career placement members, including the Distributors.

59.    The Distributors entered into Career Placement Agreements ("CP Agreements") with ForeverGreen.  Ex. A.

60.    The CP Agreements include a non-competition covenant requiring the Distributors to "work exclusively with [ForeverGreen] for a period of one year from the date of execution of this Agreement . . . [and] to focus his/her exclusive full-time efforts to build the ForeverGreen market and cannot, directly or indirectly, be a distributor, member, or associate, or otherwise promote any other MLM or network marketing program during the one year term." Ex. A, § 2.6.  The Distributors also agreed that they would neither "join nor be visible in or actively working as a Distributor, Member or Associate or any new network marketing company

during the term of [the CP Agreement] and for a period of one year after termination of [the CP Agreement]. Ex. A, § 2.6.

61.     The CP Agreements provided for liquidated damages of "all Top Up payments received" if the Distributor violated § 2.6.

62.     Billy Funk signed a CP Agreement with ForeverGreen with an Effective Date of June 23, 2015.  Ex. A.

63.     Ray Dietrich signed a CP Agreement with ForeverGreen with an Effective Date of June 23, 2015.  Ex. A.

64.     Less than one year after the effective date of the CP Agreements, the Distributors began working with Pruvit.

65.     Working for Pruvit, a network marketing company, constitutes a direct violation of the CP Agreements which prohibit Distributors from associating, promoting, join, or actively work as a Distributor, Member or Associate at any other network marketing company within a year of the effective date of the CP Agreement, and for a year after the end of the CP Agreement.

## COUNT ONE
### (Infringement of U.S. Patent No. 9,138,420 against Pruvit, LaCore Labs, Funk, Dietrich, Deboer, and Rutherford)

66.     The foregoing paragraphs of this Counterclaim are incorporated as if recited herein.

67.     This cause of action arises under the patent laws of the United States, and in particular, 35 U.S.C. §§ 271, *et seq.*

68.     The USF Patent (U.S. Patent No. 9,138,420) is valid, enforceable, and was duly issued by the United States Patent and Trademark Office in full compliance with Title 35, United States Code.

69.     Upon information and belief, Pruvit, Funk, Dietrich, Deboer, and Rutherford are directly infringing at least claim 1 of the USF Patent in this district and elsewhere in the United States by, among other things, making, using, selling, and/or offering to sell the Pruvit Infringing Products in multi-level marketing channels, including the direct-to-consumer channel. Therefore, Pruvit is liable for infringement of the USF Patent pursuant to 35 U.S.C. § 271.

70.     Upon information and belief, LaCore Labs is directly infringing at least claim 1 of the USF Patent in this district and elsewhere in the United States by, among other things, making, using, selling, and/or offering to sell the Pruvit Infringing Products to Pruvit. Therefore, LaCore Labs is liable for infringement of the USF Patent pursuant to 35 U.S.C. § 271.

71.     ForeverGreen is the exclusive sublicensee of the USF Patent in the multi-level marketing channel.

72.     Upon information and belief, Pruvit did not ever have and does not have any rights as a licensee, and any rights Pruvit may claims to have had were terminated as a result of Pruvit's breaches of their agreements with AGS. Thus, ForeverGreen is the exclusive sublicensee of the USF Patent.

73.     Pruvit, LaCore Labs, Funk, Dietrich, Deboer, and Rutherford's acts of infringement have caused damage to ForeverGreen, and ForeverGreen is entitled to recover from Pruvit, LaCore Labs, Funk, Dietrich, Deboer, and Rutherford the damages sustained by Forever Green as a result of Pruvit's wrongful and illegal acts in an amount subject to proof at trial.

74.     Upon information and belief, the infringing acts complained of herein against Pruvit, LaCore Labs, Funk, Dietrich, Deboer, and Rutherford are ongoing.

75.     As a consequence of the infringement complained of herein, ForeverGreen has been irreparably damaged to an extent not yet determined, and will continue to be irreparably

damaged by such acts in the future unless Pruvit, LaCore Labs, Funk, Dietrich, Deboer, and

Rutherford are enjoined by this Court from committing further acts of infringement of the USF

Patent.

**COUNT TWO**
(Induced Infringement of U.S. Patent No. 9,138,420 against LaCore, Underwood, Harding, Funk,
Dietrich, Deboer, and Rutherford)

76.    The foregoing paragraphs of this Counterclaim are incorporated as if recited

herein.

77.    This cause of action arises under the patent laws of the United States, and in

particular, 35 U.S.C. §§ 271, *et seq.*

78.    The USF Patent (U.S. Patent No. 9,138,420) is valid, enforceable, and was duly

issued by the United States Patent and Trademark Office in full compliance with Title 35, United

States Code.

79.    Upon information and belief, LaCore, Underwood, Harding, Funk, Dietrich,

Deboer, and Rutherford at all relevant times had knowledge of the USF Patent.

80.    Upon information and belief, LaCore, Underwood, Harding, Funk, Dietrich,

Deboer, and Rutherford have induced infringement of at least claim 1 of the USF Patent in this

district and elsewhere in the United States by, among other things, each personally directing

Pruvit to make, use, sell, and offer to sell the Pruvit Infringing Products in retail marketing

channels, including the direct-to-consumer channel.  Therefore, LaCore, Underwood, Harding,

Funk, Dietrich, Deboer, and Rutherford are each personally liable for infringement of the USF

Patent pursuant to 35 U.S.C. § 271.

81.    Upon information and belief LaCore, Underwood, Harding, Funk, Dietrich,

Deboer, and Rutherford have induced infringement of at least claim 1 of the USF Patent in this

district and elsewhere in the United States by, among other things, each personally directing LaCore Labs to make, use, sell, and offer to sell the Pruvit Infringing Products to Pruvit. Therefore, LaCore, Underwood, Harding, Funk, Dietrich, Deboer, and Rutherford are each personally liable for infringement of the USF Patent pursuant to 35 U.S.C. § 271.

82.    Upon information and belief, LaCore, Underwood, Harding, Funk, Dietrich, Deboer, and Rutherford knew, at all relevant times, that their inducement of Pruvit and/or LaCore Labs to make, use, offer to sell, and sell the Infringing Pruvit Products constituted direct patent infringement of the USF Patent.

83.    ForeverGreen is the exclusive sublicensee of the USF Patent "subject to" any rights that Pruvit "may claim to have as a non-exclusive licensee."

84.    Upon information and belief, Pruvit does not have any rights as a licensee, and any rights Pruvit may have had were terminated as a result of Pruvit's breaches of their agreements with AGS. Thus, ForeverGreen is the exclusive sublicensee of the USF Patent.

85.    LaCore, Underwood, Harding, Funk, Dietrich, Deboer, and Rutherford's acts of infringement have caused damage to ForeverGreen, and ForeverGreen is entitled to recover from LaCore, Underwood, Harding, Funk, Dietrich, Deboer, and Rutherford the damages sustained by ForeverGreen as a result of their wrongful and illegal acts in an amount subject to proof at trial.

86.    Upon information and belief, the infringing acts complained of herein against LaCore, Underwood, Harding, Funk, Dietrich, Deboer, and Rutherford continue.

87.    As a consequence of the infringement complained of herein, ForeverGreen has been irreparably damaged to an extent not yet determined, and will continue to be irreparably damaged by such acts in the future unless LaCore, Underwood, Harding, Funk, Dietrich, Deboer, and Rutherford are enjoined by this Court from committing further acts of infringement of the USF Patent.

**COUNT THREE**
(Induced Infringement of U.S. Patent No. 6,613,356 against Pruvit and LaCore Labs)

88.     The foregoing paragraphs of this Counterclaim are incorporated as if recited herein.

89.     This cause of action arises under the patent laws of the United States, and in particular, 35 U.S.C. §§ 271, *et seq*.

90.     The Vlahakos Patent (U.S. Patent No. 6,613,356) is valid, enforceable, and was duly issued by the United States Patent and Trademark Office in full compliance with Title 35, United States Code.

91.     Upon information and belief, Pruvit and LaCore Labs at all relevant times had knowledge of the Vlahakos Patent.

92.     Upon information and belief, Pruvit and LaCore Labs are inducing the infringement of at least claim 1 of the Vlahakos Patent in this district and elsewhere in the United States by, among other things, marketing and selling the Pruvit Infringing Products with instructions that they be consumed orally for causing weight loss or the avoidance of weight gain.  Therefore, Pruvit and LaCore Labs are liable for induced infringement of the Vlahakos Patent pursuant to 35 U.S.C. § 271.

93.     Upon information and belief, consumers of the Pruvit Infringing Product have directly infringed at least claim 1 of the Vlahakos patent by performing the process(es) recited therein.

94.     Upon information and belief, Pruvit and LaCore Labs knew at all relevant times that their inducement of consumers of the Pruvit Infringing Products to practice the methods claimed in the Vlahakos patent would constitute direct patent infringement of the Vlahakos Patent.

27

95.    ForeverGreen is the exclusive sublicensee of the USF Patent in the multi-level marketing channel. Upon information and belief, Pruvit has never received or entered into any agreement to receive any license for the Vlakahos Patent.

96.    Pruvit's and LaCore Labs' acts of infringement have caused damage to ForeverGreen, and ForeverGreen is entitled to recover from Pruvit and LaCore Labs the damages sustained by ForeverGreen as a result of Pruvit's and LaCore Labs' wrongful and illegal acts in an amount subject to proof at trial.

97.    Upon information and belief, the infringing acts complained of herein against Pruvit and LaCore Labs continue.

98.    As a consequence of the infringement complained of herein, ForeverGreen has been irreparably damaged to an extent not yet determined, and will continue to be irreparably damaged by such acts in the future unless Pruvit and LaCore Labs are enjoined by this Court from committing further acts of infringement of the Vlakahos Patent.

## COUNT FOUR
### (Induced Infringement of U.S. Patent No. 6,613,356 against LaCore, Underwood, Harding, Funk, Dietrich, Deboer, and Rutherford)

99.    The foregoing paragraphs of this Counterclaim are incorporated as if recited herein.

100.    This cause of action arises under the patent laws of the United States, and in particular, 35 U.S.C. §§ 271, *et seq*.

101.    The Vlakahos Patent (U.S. Patent No. 6,613,356) is valid, enforceable, and was duly issued by the United States Patent and Trademark Office in full compliance with Title 35, United States Code.

102.     Upon information and belief, LaCore, Underwood, Harding, Funk, Dietrich, Deboer, and Rutherford at all relevant times had knowledge of the Vlahakos Patent.

103.     Upon information and belief, LaCore, Underwood, Harding, Funk, Dietrich, Deboer, and Rutherford have induced infringement of at least claim 1 of the Vlahakos Patent in this district and elsewhere in the United States by, among other things, each personally marketing and selling the Pruvit Infringing Products to potential distributors and consumers with instructions that they be consumed orally for causing weight loss or the avoidance of weight. Therefore, LaCore, Underwood, Harding, Funk, Dietrich, Deboer, and Rutherford are each personally liable for inducing the infringement of the Vlahakos Patent pursuant to 35 U.S.C. § 271.

104.     Upon information and belief, LaCore, Underwood, Harding, Funk, Dietrich, Deboer, and Rutherford knew, at all relevant times, that their inducement of potential distributors and consumers to consume the Pruvit Infringing Products orally in accordance with the processes claimed in the Vlahakos Patent constituted direct patent infringement of the Vlahakos Patent.

105.     ForeverGreen is the exclusive sublicensee of the USF Patent in the multi-level marketing channel. Upon information and belief, Pruvit has never received or entered into any agreement to receive any license for the Vlakahos Patent.

106.     LaCore, Underwood, Harding, Funk, Dietrich, Deboer, and Rutherford's acts of infringement have caused damage to ForeverGreen, and ForeverGreen is entitled to recover from LaCore, Underwood, Harding, Funk, Dietrich, Deboer, and Rutherford the damages sustained by ForeverGreen as a result of their wrongful and illegal acts in an amount subject to proof at trial.

107.     Upon information and belief, the infringing acts complained of herein against LaCore, Underwood, Harding, Funk, Dietrich, Deboer, and Rutherford continue.

29

108.    As a consequence of the infringement complained of herein, ForeverGreen has been irreparably damaged to an extent not yet determined, and will continue to be irreparably damaged by such acts in the future unless LaCore, Underwood, Harding, Funk, Dietrich, Deboer, and Rutherford are enjoined by this Court from committing further acts of infringement of the Vlahakos Patent.

## COUNT FIVE
(Violation of the Lanham Act – False Advertising against Pruvit, Funk, Dietrich, Deboer, and Rutherford))

109.    The foregoing paragraphs of this Counterclaim are incorporated as if recited herein.

110.    In commercial advertising or promotion, Pruvit, Funk, Dietrich, Deboer, and Rutherford have misrepresented the nature, characteristics, qualities, or geographic origin of Pruvit's goods in violation of the Lanham Act.

111.    Such misrepresentations include, but are not limited to: (a) that Pruvit was the first company approved by the University of South Florida to acquire the sublicense rights to use this patent pending technology; (b) that Pruvit's KETO//OS product is a worldwide exclusive proprietary formula; (c) that Pruvit's product is endorsed by the University of South Florida; and (d) that Pruvit owns the worldwide rights to KETO//OS.

112.    Pruvit, Funk, Dietrich, Deboer, and Rutherford's acts constitute false advertising in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

113.    Pruvit, Funk, Dietrich, Deboer, and Rutherford's acts of false advertisement have caused and continue to directly and proximately cause ForeverGreen to suffer damages in an amount to be determined at trial.

114.    Pursuant to 15 U.S.C. §1117 and other applicable law, ForeverGreen is entitled to recover damages from Pruvit, Funk, Dietrich, Deboer, and Rutherford resulting from its false misrepresentations of fact, in an amount to be determined at trial.

115.    As a consequence of the false advertising complained of herein, ForeverGreen has been irreparably damaged to an extent not yet determined, and will continue to be irreparably damaged by such acts in the future unless Pruvit, Funk, Dietrich, Deboer, and Rutherford are enjoined by this Court from committing further acts of false advertising.

## COUNT SIX
(Deceptive Trade Practices – Against Pruvit, Funk, Dietrich, Deboer, and Rutherford)

116.    The foregoing paragraphs of this Counterclaim are incorporated as if recited herein.

117.    In commercial advertising or promotion, Pruvit, Funk, Dietrich, Deboer, and Rutherford have engaged in false, misleading, or deceptive acts or practices in violation of the Texas Business and Commercial Code § 17.46.

118.    Such misrepresentations include, but are not limited to: (a) that Pruvit was the first company approved by the University of South Florida to acquire the sublicense rights to use this patent pending technology; (b) that Pruvit's KETO//OS product is a worldwide exclusive proprietary formula; (c) that Pruvit's product is endorsed by the University of South Florida; and (d) that Pruvit owns the worldwide rights to KETO//OS.

119.    Pruvit, Funk, Dietrich, Deboer, and Rutherford's acts involve representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which the person does not, in violation of Section 17.46 of the Texas Business and Commercial Code.

31

120.    Pruvit, Funk, Dietrich, Deboer, and Rutherford's acts also involve disparaging the goods, services, or business of ForeverGreen by false or misleading representation of facts.

121.    Pruvit, Funk, Dietrich, Deboer, and Rutherford's acts of false advertisement have caused and continue to directly and proximately cause ForeverGreen to suffer damages in an amount to be determined at trial.

122.    As a consequence of the false advertising complained of herein, ForeverGreen has been irreparably damaged to an extent not yet determined, and will continue to be irreparably damaged by such acts in the future unless Pruvit, Funk, Dietrich, Deboer, and Rutherford are enjoined by this Court from committing further acts of false advertising.

### COUNT SEVEN
(Tortious Interference with Contract – Against Pruvit)

123.    The foregoing paragraphs of this Counterclaim are incorporated as if recited herein.

124.    ForeverGreen entered into valid and enforceable CP Agreements with Distributors.

125.    ForeverGreen's CP Agreements with Distributors included a non-compete covenant, barring them from working with a competitor.

126.    Pruvit interfered with ForeverGreen's CP Agreements with Distributors by inducing them to breach the CP Agreements and worked for Pruvit instead.

127.    Upon information and belief, Pruvit knew of the existence of ForeverGreen's CP Agreements with Distributors, and knew that the CP Agreements included non-compete covenants, and willfully and intentionally induced the Distributors to breach the CP Agreements.

32

128.    Pruvit's willful and intentional inducement of the Distributors' breaches actually and proximately caused ForeverGreen damages, through lost sales, business, profits, market share, and business opportunities.

**<u>COUNT EIGHT</u>**
(Tortious Interference with Prospective Business Relations – Against Pruvit, Funk, Dietrich, Deboer, and Rutherford)

129.    The foregoing paragraphs of this Counterclaim are incorporated as if recited herein.

130.    In an open conference call, and in videos that are available online, a representative of Pruvit published false and disparaging information about ForeverGreen, including that ForeverGreen was not the exclusive licensee of ketosis technology, and that Pruvit rather than ForeverGreen had the backing of USF and Dr. Agostino.

131.    Upon information and belief, the conference call participants, and viewers of the videos, included potential distributors interested in the ketosis product, who would have chosen to work with ForeverGreen as the only exclusive sublicensee of all of the intellectual property and patents required to produce and market a ketosis product.

132.    Funk, Dietrich, Deboer, and Rutherford have published numerous false and disparaging information about ForeverGreen and that ForeverGreen was not the exclusive licensee of ketosis technology, and that Pruvit rather than ForeverGreen had the backing of USF and Dr. Agostino.

133.    ForeverGreen had a reasonable probability of entering into a contractual relationship with potential distributors, given they were seeking distributor agreements, specifically for ketosis products, and expressed concern over exclusivity—indicating that but/for Pruvit's false remarks, they would have chosen to contract with ForeverGreen.

134.     Pruvit, Funk, Dietrich, Deboer, and Rutherford's false remarks to the conference call participants and other recipients of published false statements are independently tortious, constituting deceptive trade practices, false advertising, and business disparagement.

135.     Pruvit, Funk, Dietrich, Deboer, and Rutherford made false remarks with the conscious desire to prevent a business relationship between the distributors and ForeverGreen from occurring, or knew that the interference was certain or substantially certain to occur as a result of the conduct, given they were specifically responding to concerns about ForeverGreen's exclusivity.

136.     Pruvit, Funk, Dietrich, Deboer, and Rutherford's acts of tortious interference have caused and continue to directly and proximately cause ForeverGreen to suffer damages in an amount to be determined at trial.

137.     As a consequence of the tortious interference complained of herein, ForeverGreen has been irreparably damaged to an extent not yet determined, and will continue to be irreparably damaged by such acts in the future unless Pruvit, Funk, Dietrich, Deboer, and Rutherford are enjoined by this Court from committing further acts of false advertising.

## **COUNT NINE**
(Business Disparagement – Against Pruvit, Funk, Dietrich, Deboer, and Rutherford)

138.     The foregoing paragraphs of this Counterclaim are incorporated as if recited herein.

139.     In an open conference call and other public mediums, representatives of Pruvit and Funk, Dietrich, Deboer, and Rutherford published false and disparaging information about ForeverGreen, including that ForeverGreen was not the exclusive licensee of ketosis technology, and that Pruvit rather than ForeverGreen had the backing of USF and Dr. Agostino.

140.    On Pruvit's website, Pruvit published false and disparaging information about ForeverGreen, stating that Pruvit owned the worldwide rights to the technology, had the backing of USF, and was the first to develop the technology, suggesting that ForeverGreen does not have the rights, and backing.

141.    These statements are false and disparaging to Pruvit.

142.    At all times, Pruvit, Funk, Dietrich, Deboer, and Rutherford knew of ForeverGreen's exclusive licenses to significant ketosis related property, including the USF Patents and the Vlakahos Patent, or acted with reckless disregard concerning such privileged.

143.    At all times, Pruvit, Funk, Dietrich, Deboer, and Rutherford made those false statements with ill will and the intention to interfere with the economic interest of ForeverGreen and damage ForeverGreen's relationships with distributors.

144.    No privilege exists for Pruvit, Funk, Dietrich, Deboer, and Rutherford to make false and disparaging statements about ForeverGreen.

145.    ForeverGreen has suffered special damages, including damage to business reputation, loss of good will, loss of sales, and loss of market share and business opportunities.

## COUNT TEN
(Breach of Contract – Against Distributors)

146.    The foregoing paragraphs of this Counterclaim are incorporated as if recited herein.

147.    The CP Agreements are valid and enforceable contracts between and for the benefit of ForeverGreen and each of the Distributors, individually.

148.    The Distributors received valuable consideration in exchange for their agreement to the provisions of the CP Agreements, including their employment, commissions, and payments, including Top Up payments.

149.    ForeverGreen has fully performed its obligations under the CP Agreement.

150.    On information and belief, the Distributors have materially breached the CP Agreements by working for, associating with, promoting, or joining Pruvit, a competitor of ForeverGreen's in the network marketing industry.

151.    As a direct and proximate result of the Distributor's breaches of the CP Agreements, ForeverGreen has suffered and continues to suffer damages, in an amount to be determined at trial.

152.    ForeverGreen is entitled to an award of damages for the Distributor's breaches of the CP Agreements.

153.    In the CP Agreements, the Distributors agreed that breach of the non-compete covenant in § 2.6 would result in liquidated damages in the amount of all Top Up payments received by the Distributor.

154.    ForeverGreen is therefore entitled to an order of specific performance compelling the Distributors to pay to ForeverGreen the amount of all Top Up payments received.

155.    By virtue of the Distributor's breaches of the CP Agreement, ForeverGreen has suffered and will continue to suffer irreparable injury absent the issuance of equitable relief, including but not limited to specific performance and injunctive relief.

156.    The nature of the network marketing industry relies on exponentially increasing distributors at each sub-distributor level. This market structure means that the loss of even a single distributor would lead to a cascading effect of loss of market share and exponentially increasing numbers of sub-distributors, causing irreparable injury that would be impossible to predict or calculate.

157.    The irreparable injury to ForeverGreen includes, but is not limited to, loss of market share and sub-distributors to Pruvit, a direct competitor of ForeverGreen.

158.    ForeverGreen is entitled to injunctive relief to prevent further violation of the non-compete covenants in the CP Agreements.

## PRAYER FOR RELIEF

Wherefore, ForeverGreen prays for the following relief:

A.    Judgment in favor of ForeverGreen and against Pruvit that LaCore Labs, LaCore, Underwood, Harding, Funk, Dietrich, Deboer, and Rutherford have each infringed the USF patent;

B.    Judgment in favor of ForeverGreen and against Pruvit, LaCore Labs, LaCore, Underwood, Harding, Funk, Dietrich, Deboer, and Rutherford, jointly and severally, for ForeverGreen's damages attributable to Pruvit, LaCore Labs, LaCore, Underwood, Harding, Funk, Dietrich, Deboer, and Rutherford's infringement of the USF Patent;

C.    Judgment that Pruvit, Pruvit, LaCore Labs, LaCore, Underwood, Harding, Funk, Dietrich, Deboer, and Rutherford have each willfully infringed the USF patent;

D.    Judgment against Pruvit, LaCore Labs, LaCore, Underwood, Harding, Funk, Dietrich, Deboer, and Rutherford for treble/enhanced damages in light of their willful infringement of the USF patent pursuant to 35 U.S.C. § 284;

E.    That ForeverGreen be granted preliminary and permanent injunctive relief pursuant to 35 U.S.C. § 283 enjoining Pruvit, LaCore Labs, LaCore, Underwood, Harding, Funk, Dietrich, Deboer, and Rutherford, their officers, agents, servants, employees, and all those persons in active concert or participation with them from further acts of infringement of the USF patent;

F.      Judgment that Pruvit, LaCore Labs, LaCore, Underwood, Harding, Funk, Dietrich, Deboer, and Rutherford have each infringed the Vlahakos patent;

G.      Judgment in favor of ForeverGreen and against Pruvit, LaCore Labs, LaCore, Underwood, Harding, Funk, Dietrich, Deboer, and Rutherford, jointly and severally, for damages suffered by ForeverGreen and attributable to Pruvit, LaCore Labs, LaCore, Underwood, Harding, Funk, Dietrich, Deboer, and Rutherford's infringement of the Vlahakos Patent;

H.      Judgment that Pruvit, LaCore Labs, LaCore, Underwood, Harding, Funk, Dietrich, Deboer, and Rutherford have each willfully infringed the Vlahakos patent;

I.      Judgment against Pruvit, LaCore Labs, LaCore, Underwood, Harding, Funk, Dietrich, Deboer, and Rutherford for treble/enhanced damages in light of their willful infringement of the Vlahakos patent, pursuant to 35 U.S.C. § 284;

J.      That ForeverGreen be granted preliminary and permanent injunctive relief pursuant to 35 U.S.C. § 283 enjoining Pruvit, LaCore Labs, LaCore, Underwood, Harding, Funk, Dietrich, Deboer, and Rutherford, their officers, agents, servants, employees, and all those persons in active concert or participation with them from further acts of infringement of the Vlahakos patent;

K.      That the Court declare this an exceptional case and that ForeverGreen be granted its reasonable attorneys' fees against Pruvit, LaCore Labs, LaCore, Underwood, Harding, Funk, Dietrich, Deboer, and Rutherford in accordance with 35 U.S.C. § 285;

L.      Judgment in favor of ForeverGreen and against Pruvit, LaCore Labs, LaCore, Underwood, Harding, Funk, Dietrich, Deboer, and Rutherford, jointly and severally, granting ForeverGreen pre-judgment and post-judgment interest all damages caused to it by reason of

Pruvit, LaCore Labs, LaCore, Underwood, Harding, Funk, Dietrich, Deboer, and Rutherford's patent infringement;

M.    Judgment in favor of ForeverGreen and against the Distributors for all damages incurred by ForeverGreen due to the Distributor's breach of contract;

N.    That ForeverGreen be granted preliminary and permanent injunctive relief enjoining the Distributor's, their officers, agents, servants, employees, and all those persons in active concert or participation with them from further acts of breach of contract;

O.    That ForeverGreen be granted specific performance of the contracts with the Distributors;

P.    Judgment that Pruvit has committed false advertising under the Lanham Act;

Q.    Judgment in favor of ForeverGreen and against Pruvit for all of Pruvit's profits arising out of Pruvit's false advertising under the Lanham Act;

R.    Judgment in favor of ForeverGreen and against Pruvit for ForeverGreen's damages arising out of Pruvit's false advertising under the Lanham Act;

S.    That ForeverGreen be granted preliminary and permanent injunctive relief pursuant to 15 U.S.C. § 1125(c) enjoining Pruvit, its officers, agents, servants, employees and those persons in active concert or participation with it from further acts of false advertising, pursuant to Section 34 of the Lanham Act, 15 U.S.C. § 1116;

T.    Judgment in favor of ForeverGreen and against Pruvit granting ForeverGreen pre-judgment and post-judgment interest on damages caused to it by reason of ForeverGreen's Lanham Act violations;

U.    That the Court declare this an exceptional case and that ForeverGreen be granted its reasonable attorneys' fees against  Pruvit in accordance with 15 U.S.C. § 1117;

That ForeverGreen be granted preliminary and permanent injunctive relief enjoining the Distributor's, their officers, agents, servants, employees, and all those persons in active concert or participation with them from further acts of breach of contract;

V.    Judgment in favor of ForeverGreen and against Pruvit that it has committed false, misleading, or deceptive acts or practices in violation of the Texas Business and Commercial Code § 17.46;

W.    Judgment in favor of ForeverGreen and against Pruvit for all of Pruvit's profits arising out of Pruvit's violation of the Texas Business and Commercial Code § 17.46;

X.    Judgment in favor of ForeverGreen and against Pruvit for ForeverGreen's damages arising out of Pruvit's violation of the Texas Business and Commercial Code § 17.46;

Y.    That ForeverGreen be granted preliminary and permanent injunctive relief enjoining Pruvit, its officers, agents, servants, employees and those persons in active concert or participation with it from further false, misleading, or deceptive acts or practices;

Z.    Judgment that Pruvit has tortuously interfered with ForeverGreen's contracts with Distributors;

AA.    Judgment in favor of ForeverGreen and against Pruvit for ForeverGreen's damages arising out of Pruvit's tortious interference with ForeverGreen's contracts;

BB.    Judgment in favor of ForeverGreen and against Pruvit for all of Pruvit's profits arising out of its tortious interference with contract;

CC.    That ForeverGreen be granted preliminary and permanent injunctive relief enjoining Pruvit, its officers, agents, servants, employees and those persons in active concert or participation with it from further tortiously interfering with ForeverGreen's contracts;

DD.     Judgment that Pruvit has tortuously interfered with ForeverGreen's prospective business relations with prospective distributors and customers;

EE.     Judgment in favor of ForeverGreen and against Pruvit for ForeverGreen's damages arising out of Pruvit's tortious interference with ForeverGreen's prospective business relations;

FF.     Judgment in favor of ForeverGreen and against Pruvit for all of Pruvit's profits arising out of Pruvit's tortious interference with prospective business relations;

GG.     That ForeverGreen be granted preliminary and permanent injunctive relief enjoining Pruvit, its officers, agents, servants, employees and those persons in active concert or participation with it from further tortiously interfering with ForeverGreen's prospective business relations;

HH.     Judgment that Pruvit has engaged in business disparagement of ForeverGreen;

II.     Judgment in favor of ForeverGreen and against Pruvit for ForeverGreen's damages arising out of Pruvit's business disparagement of ForeverGreen;

JJ.     That ForeverGreen be granted preliminary and permanent injunctive relief enjoining Pruvit, its officers, agents, servants, employees and those persons in active concert or participation with it from further disparaging ForeverGreen;

KK.     An award of costs to ForeverGreen; and

/ / /

/ / /

41

LL.    Such other and further relief that this Court deems appropriate under the circumstances.

## <u>Jury Demand</u>

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, ForeverGreen hereby demands trial by jury in this action on all issues so triable.

DATED: October 26, 2015

By: */s/ Larry R. Laycock*
    Lance Jensen(Texas Bar No.: 24069995)
    Larry R. Laycock *(pro hac vice admission)*
    Tyson K. Hottinger *(pro hac vice admission)*
    Adam B. Beckstrom *(pro hac vice admission)*
    **MASCHOFF BRENNAN**
    201 South Main Street, Suite 600
    Salt Lake City, Utah 84111
    *ljensen@mabr.com*
    *llaycock@mabr.com*
    *thottinger@mabr.com*
    *abeckstrom@mabr.com*
    Telephone: 435-252-1360
    Facsimile: 435-252-1361

    Attorneys for Defendant
    ForeverGreen International, LLC

## CERTIFICATE OF SERVICE

I hereby certify that on October 26, 2015, I caused a true and correct copy of the foregoing document to be filed with the Clerk of Court and served on all counsel of record via CM/ECF pursuant to Local Rule CV-5(a).

*/s/ Larry R. Laycock*

## CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL

Pursuant to Local Rule CV-5(a)(7)(A), this is to certify that defendant and counterclaimant ForeverGreen International, LLC has filed a motion to seal Exhibit A to the foregoing.

*/s/ Larry R. Laycock*