**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| PRUVIT VENTURES, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:15-CV-571-ALM- |
| | § | CAN |
| FOREVERGREEN INTERNATIONAL LLC, | § | |
| ET AL., | § | |
| | § | |
| Defendants. | § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Pending before the Court is Defendants Axcess Global Sciences, LLC ("Axcess Global")
and ForeverGreen International LLC's ("ForeverGreen") (collectively "Defendants") Emergency
Motion for Temporary Restraining Order, Expedited Discovery, and Preliminary Injunction
("Motion for Preliminary Injunction") [Dkt. 30].  Defendants seek to enjoin Plaintiff Pruvit
Ventures, Inc. ("Pruvit" or "Plaintiff"), and its agents, servants, employees, attorneys, and any
persons acting in active concert or participation with Pruvit, from distributing the KETO//OS
product, or derivatives thereof during the pendency of this lawsuit [Dkt. 30-27 at 2-3].  The
Court held a full evidentiary hearing on the merits of Defendants' request on December 3, 2015,
and continuing on December 4, 2015.  After carefully considering the Motion for Preliminary
Injunction, Response [Dkt. 64], evidence presented and/or proffered to the Court in connection
with the hearing, and the oral argument of counsel, the Court recommends that the Motion for
Preliminary Injunction be **DENIED**.

## BACKGROUND

Axcess Global is the exclusive licensee of patented ketone technology [Dkt. 1 at 2; Dkt. 30 at 8]. The technology relates to nutritional ketosis, which is a natural metabolic state where the body burns fat, rather than glucose from carbohydrates for most of its energy [Dkt. 30 at 8], and is described in United States Patent Nos. 6,613,356 (the "`356 Vlahakos Patent") and 9,138,420 (the "`420 USF Patent") (collectively the "Asserted Patents"). *Id*. The `356 Vlahakos Patent relates to the use of butyrate salts in dietary supplements to achieve appetite suppression and weight loss. *Id*.; *see also* U.S. Patent No. 6,613,356. The `420 USF Patent relates to a composition of butyrate salts and medium chain fatty acids to induce ketosis. *Id*.; *see also* U.S. Patent No. 9,138,420.

In early 2013, Axcess Global approached ForeverGreen to jointly develop a ketosis supplement, KetonX [Dkt. 30 at 8]. Defendants expended time and money on research, product development, and testing, but were unable to get a product to market at that time. *Id*. at 8-9. In early 2014, ForeverGreen's CEO Ron Williams ("Mr. Williams") introduced the ketosis supplement to Terry LaCore ("Mr. LaCore"), and the two explored the possibility of Mr. LaCore's marketing company, bHIP Global, conducting product testing on early versions of KetonX in China. *Id*. at 9, 13; *see also* Dkt. 17 at 5. Mr. Williams, together with Axcess Global and Mr. LaCore, discussed the possibility of bHIP Global licensing the ketosis supplement for distribution in China (and later other countries in Asia), while ForeverGreen would maintain distribution rights in the rest of the world. *Id*. at 13-14. Mr. LaCore and ForeverGreen both began testing the ketosis supplement to determine if a palatable product could be achieved; however, this early version of the product was not marketable and caused significant gastrointestinal side effects. *Id*. at 14; *see also* Dkt. 17 at 5.

In October 2014, Mr. LaCore introduced Axcess Global to Brian Underwood ("Mr. Underwood") and Chris Harding ("Mr. Harding") [Dkt. 30 at 15], and they began discussions regarding a potential license agreement for the patented technology [Dkt. 30 at 15; Dkt. 17 at 9]. Mr. LaCore, Mr. Underwood, and Mr. Harding then formed Pruvit Ventures, Inc. with the intention of taking a ketosis supplement to market under this company name [Dkt. 30 at 15]. On December 31, 2014, Axcess Global and Pruvit signed a non-exclusive sub-license agreement ("Pruvit Sub-License") which included licensing of the `420 USF Patent and related "know-how." *Id.* at 16; *see also* Def. PI Hearing Ex. 27. The Pruvit Sub-License included a provision requiring the University of South Florida's ("USF") approval of the contract prior to it becoming effective (as USF is owner of the `420 USF Patent), and a provision requiring Pruvit to obtain liability insurance coverage [Def. PI Hearing Ex. 27 at 13,15]. Defendants contend that USF never approved the Pruvit Sub-License – rendering it ineffective – and/or that Pruvit failed to obtain liability insurance in a timely manner – rendering Pruvit in breach of the Sub-License [Dkt. 30 at 17-18]. Pruvit counters that USF did in fact approve the Sub-License [Dkt. 64 at 7], and that it "met and continues to meet the actual [insurance] coverage requirements" [Dkt. 64 at 7, 10]. Accordingly, the validity of the Pruvit Sub-License is currently in dispute in this litigation.

On May 12, 2015, Pruvit went to market with a ketosis supplement called KETO//OS[1] [Dkt. 30 at 9-10; Dkt. 64 at 26].[2] On July 10, 2015, ForeverGreen went to market with its ketosis supplement, KetonX – two months after Pruvit's launch. *Id.* Defendants contend Pruvit

---

[1] Pruvit also launched another product called KETO//COS, which includes caffeine [Dkt. 30 at 10]. The Court hereinafter refers to both products as KETO//OS.

[2] Pruvit launched KETO//OS in a "multi-level marketing" ("MLM") network [Dkt. 17 at 14; Def. PI Hearing Ex. 27]. MLM "usually involves independent contractors who earn commission through sales on behalf of a company. Those independent contractors may also recruit other independent contractors and earn commissions based on sales by those recruits." *Gold Refinery, LLC v. Aloha Island gold, LLC*, No. 11-00522, 2012 WL 518396, at *1 (D. Haw. Feb. 15, 2012).

infringed upon their patent rights under both Asserted Patents and misappropriated Axcess Global's trade secrets in order to launch KETO//OS. *Id.* at 10. At least some of the facts surrounding the purported infringement and misappropriation turn on the validity of the Pruvit Sub-License.

On August 24, 2015, Pruvit filed its Complaint in this Court against ForeverGreen and Axcess Global asserting claims against Axcess Global for breach of the Pruvit Sub-License, fraud, and promissory estoppel, and claims against ForeverGreen for fraud, business disparagement, tortious interference, and false/misleading statements of fact in advertising against ForeverGreen [Dkt. 1]. On October 8, 2015, Pruvit filed its Amended Complaint asserting an additional unfair competition claim against Axcess Global [Dkt. 17]. On October 26, 2015, Axcess Global filed its Answer, Counterclaim, and Third-Party Complaint: (1) asserting twenty-three affirmative defenses; (2) asserting counterclaims and third-party claims for patent infringement, trade secret misappropriation, breach of contract, and false advertising against various Parties including Pruvit, LaCore Labs, Mr. LaCore, Mr. Underwood, Mr. Harding, SavInd, Inc., and Ketotech, Inc.; and (3) requesting a declaratory judgment that the Pruvit Sub-License was never effective and/or has been terminated [Dkt. 21]. On October 26, 2015, ForeverGreen also filed its Answer, Counterclaims, and Third-Party Complaint: (1) asserting eighteen affirmative defenses; (2) asserting counterclaims and third-party claims for patent infringement, false advertising, deceptive trade practices, tortious interference with contract, tortious interference with business relations, business disparagement, and breach of contract against various Parties including Pruvit, LaCore Labs, Mr. LaCore, Mr. Underwood, Mr. Harding, Billy Funk, Ray Dietrich, Michael Rutherford, and Robert Deboer;

and (3) requesting a declaratory judgment that the Pruvit Sub-License was never effective and/or has been terminated [Dkt. 26].

In addition to their counterclaims, on October 26, 2015, Axcess Global and ForeverGreen jointly filed an Emergency Motion for Temporary Restraining Order, Expedited Discovery, and Preliminary Injunction [Dkt. 30]. Defendants seeks to enjoin Pruvit arguing that they (1) are likely to succeed on their claims of patent infringement and misappropriation of trade secrets and (2) are currently being irreparably harmed by Pruvit's sale of KETO//OS [Dkt. 30 at 11]. On October 30, 2015, Axcess Global, ForeverGreen, and Pruvit (collectively the "Parties") filed a Stipulated Motion Re Expedited Discovery [Dkt. 56]. On November 2, 2015, the Court granted the Motion [Dkt. 56], setting an expedited discovery schedule and scheduling the Motion for Preliminary Injunction for hearing on December 3, 2015 [Dkt. 57]. Pruvit filed its Response in Opposition to the Motion for Preliminary Injunction on November 6, 2015 [Dkt. 64]. The Court held a full evidentiary hearing on the injunctive relief sought by Defendants on December 3, 2015, and continuing December 4, 2015.

## LEGAL STANDARD

To be entitled to a preliminary injunction, the moving party must establish that "(1) he is likely to succeed on the merits; (2) that he is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 21 (2008). A preliminary injunction under both Fifth Circuit precedent and Federal Circuit precedent "is an extraordinary and drastic remedy, not to be granted routinely, but only when the movant, by a clear showing, carries the burden of persuasion." *White v. Carlucci*, 862 F.2d 1209, 1211 (5th Cir. 1989); *see also Trebro Mfg., Inc. v. Firefly Equipment, LLC,* 748 F.3d 1159, 1165 (Fed. Cir.

2014) ("A preliminary injunction is an extraordinary remedy that may only be awarded upon a clear showing that the [movant] is entitled to such relief.") (internal quotation marks omitted). Defendants' misappropriation of trade secrets claim is governed by Texas law, and thus Fifth Circuit case law, whereas their patent infringement claims are governed by Federal Circuit case law. *Daniels Health Sciences, L.L.C. v. Vascular Health Sciences, L.L.C.*, 710 F. 3d 579, 583 (5th Cir. 2013) (citing *Taco Cabana Int'l, Inc. v. Two Pesos, Inc.*, 932 F.2d 1113, 1123 (5th Cir. 2001); *see also Revision Military, Inc. v. Balboa Mfg. Co.*, 700 F.3d 524, 525-26 (Fed. Cir. 2012). Notwithstanding, the preliminary injunction elements a moving party must establish are the same under both claims. *See Winter*, 555 U.S. at 21.

## ANALYSIS

Defendants seek to enjoin Pruvit, and its agents, servants, employees, attorneys, and any persons acting in active concert or participation with Pruvit, from distributing the KETO//OS product, or derivatives thereof [Dkt. 30-27 at 2-3]. The Court will address each preliminary injunction factor below.

### I.     *Likely Success on the Merits*

Defendants contend that they are likely to succeed on the merits of their misappropriation of trade secrets and patent infringement claims [Dkt. 30 at 22, 28]. Pruvit argues to the contrary on the basis that (1) Pruvit retains rights to utilize the patented technology under the Pruvit Sub-License [Dkt. 64 at 7]; (2) Defendants failed to prove the existence of a valid, protectable trade secret [Dkt. 64 at 13]; and (3) Defendants failed to establish infringement of the Asserted Patents [Dkt. 64 at 16]. For the purposes of this Report and Recommendation, the Court assumes

*arguendo* that Defendants have shown a likelihood of success on the merits, and finds the first

preliminary injunction factor weighs in Defendants' favor.[3]

## II.     *Irreparable Harm*

Defendants claim they will suffer irreparable harm if Pruvit is not enjoined due to:

(1) price erosion; (2) reputational harm; (3) harm to shareholder value; (4) loss of market share,

and other first to market opportunities;[4] (5) loss of future profits; and (6) loss of the right to

exclude [*see* Dkt. 30 at 39-45; Def. Closing PowerPoint Slides 115-134]. Pruvit responds that

Defendants will not suffer irreparable harm under any of these factors because an adequate

remedy at law exists, specifically monetary damages [Dkt. 64 at 27]. Defendants must carry the

burden on this element, and to do so "must demonstrate the threat of irreparable harm by

independent proof, or no injunction may issue."[5] *Randolph v. Nationstar Mortg., LLC*, No. 11-

2165, 2012 WL 2450016, at *4 (E.D. La. June 27, 2012) (citing *White v. Carlucci,* 862 F.2d

1209, 1211 (5th Cir. 1989)). "Speculative injury is not sufficient; there must be more than an

unfounded fear on the part of the applicant." *Holland Am. Ins. Co. v. Succession of Roy*, 777

---

[3] The Court expresses no opinion on whether Defendants are likely to ultimately prevail on their counterclaims at trial.

[4] The Court combines the alleged harms of loss of important industry contacts and/or distributors, limited supply of raw materials, and deceptive labeling into the more general category and/or discussion of loss of first to market opportunities [*see* Def. Closing PowerPoint Slides 122, 124, 126-28, 131].

[5] Courts no longer apply any presumption of irreparable harm in patent cases where a patentee seeking a preliminary injunction has demonstrated a likelihood of success on the merits by making a clear showing of infringement. *See Automated Merch. Sys. v. Crane Co.*, 357 F. App'x 297, 301 (Fed. Cir. 2009); *FieldTurf USA, Inc. v. Astroturf, LLC*, 725 F. Supp. 2d 609, 616-17 (E.D. Mich. 2010); *The Research Foundation of State University of New York v. Mylan Pharmaceuticals Inc.*, 723 F. Supp. 2d 638, 646 (D. Del. 2010). Historically, in a patent infringement action, a party seeking a preliminary injunction could establish irreparable harm by making a strong showing that its patent had been infringed. *Purdue Pharma L.P. v. Boehringer Ingelheim GMBH*, 237 F.3d 1359, 1363 (Fed. Cir. 2001). However, in 2006, the United States Supreme Court held that even in cases where infringement has been proven on the merits, for purposes of considering a permanent injunction, there is no presumption that the infringement has caused irreparable harm. *eBay Inc. v. MercExchange*, LLC, 547 U.S. 388, 392-94 (2006). Although *eBay* dealt with permanent injunctions, the Federal Circuit has adopted the same reasoning for preliminary injunctions, holding that even where a strong showing of infringement has been made, "[t]he burden is now on the patentee to demonstrate that its potential losses cannot be compensated by monetary damages." *Automated Merch. Sys.*, 357 F. App'x at 301 ("[T]he presumption of irreparable harm, based just on proof of infringement, [has been] discarded. The burden is now on the patentee to demonstrate that its potential losses cannot be compensated by monetary damages.") (citing *eBay*, 547 U.S. at 392-94).

F.2d 992, 997 (5th Cir. 1985); *see also Mike's Train House, Inc. v. Broadway Ltd. Imports, LLC*, 708 F. Supp. 2d 527, 532 (D. Md. 2010) ("Mere speculation about possible market share losses is insufficient evidence of irreparable harm."); *Z-Man Fishing Products, Inc., v. Renosky*, 790 F. Supp. 2d 418, 423 (D.S.C. 2011) (finding no irreparable harm where the moving party failed to provide "any evidence of lost goodwill, loss of market share, or price erosion"). Ultimately, therefore, to obtain injunctive relief (whether a patent case or not) the moving party must show that irreparable harm is ***likely***. *See Winter*, 555 U.S. at 22 ("A court may only issue injunctive relief if irreparable harm is 'likely'; granting an injunction based on a mere possibility of remote injury is insufficient, even if a [movant] has shown a nearly certain likelihood of success."). Moreover, under both Fifth Circuit precedent and Federal Circuit precedent, "a harm is irreparable where there is no adequate remedy at law, such as monetary damages." *Janvey v. Alguire*, 647 F.3d 585, 600 (5th Cir. 2011); *see also Canon, Inc. v. GCC Int'l, Ltd*., 263 F. App'x 57, 62 (Fed. Cir. 2008). Accordingly, Defendants here must demonstrate that monetary damages are an insufficient remedy and that their alleged harms are not just possible, but ***likely***. *Id*.; *see also Janvey*, 647 F.3d at 585; *Canon, Inc*., 263 F. App'x at 62. Defendants have failed to do so; the Court addresses each of Defendants alleged harms in turn.

### A.    *Price Erosion*

Defendants argue they will be irreparably harmed due to the price erosion Pruvit's KETO//OS is having/will continue to have on the ketosis supplement market [Dkt. 30 at 40]. More specifically, Defendants argue irreparable harm will result because "they ***may*** be forced to drop the price of KetonX to compete with Pruvit who is currently selling KETO//OS to distributors "at a 32% discount from ForeverGreen's legitimate price." *Id*. (emphasis added); *see also* Dkt. 30-13 at 12, Ex. I. ForeverGreen further contends that customers do not want, or

expect, the price of a product to go up over time and "*[i]f* ForeverGreen is forced to reduce the price of its KetonX product to match Pruvit's KETO//OS, ForeverGreen will **likely** not be able to increase its price back to its original price in the future without destroying good will and customer relationships that ForeverGreen has worked so hard to foster." *Id.* (emphasis added). In support of its price erosion argument, Mr. Williams testified that, if not for Pruvit's KETO//OS price, "[i]t is our *opinion* that the market value [of KetonX] would be different" [Williams Deposition at 134:2-3 (emphasis added)]. Additionally, ForeverGreen claims that "Pruvit is undercutting the market by selling products nearly at cost, setting an untenable price for the market" [Def. Closing PowerPoint Slide 130; Def. PI Hearing Ex. 204]. Pruvit counters that Defendants' price erosion argument is without merit because "Pruvit set its sales price based upon the presumption it would pay the royalties under the [Pruvit] Sub-License" and "Pruvit continues to set aside the royalties due under the [Pruvit] Sub-License that will be payable [to Axcess Global] upon the resolution of this matter" [Dkt. 64 at 28]. Furthermore, Pruvit argues "[t]he fact that Pruvit can negotiate better pricing on raw materials does not constitute price erosion." *Id.*

Courts nationwide, both pre- and post-*Winter/eBay*, have routinely determined that price erosion does not amount to irreparable harm. *Nutrition 21*, 930 F.2d at 871; *Eli Lilly v. American Cynamid Co*., 82 F.3d 1568, 1578 (Fed. Cir. 1996) ("Such a rule would convert the 'extraordinary' relief of a preliminary injunction into a standard remedy available whenever the plaintiff has shown a likelihood of success on the merits."); *Altana Pharma AG v. Teva Pharmaceuticals USA, Inc*., 532 F. Supp. 2d 666, 682 (D.N.J. 2007) (finding movants did not establish irreparable harm despite contending "loss of revenue, price erosion, decrease in market share, loss of research opportunities, [and] reduction in workforce"); *Bettcher Industries, Inc. v.*

*Bunzl USA, Inc.*, 692 F. Supp. 2d 805, 821 (N.D. Ohio 2010) (finding no irreparable harm when a complex pricing scheme did not exist and "the past and future economic harm to [movant] resulting from [non-movant's] alleged infringement should be readily calculable and compensable by money damages"); *King Pharma, Inc. v. Sandoz, Inc*., No. 08-5974, 2010 WL 1957640, at *5 (D.N.J. May 17, 2010); *Wavetronix LLC v. Iteris, Inc.,* No. A-14-CA-970-SS, 2015 WL 300726, at *7-8 (W.D. Tex. Jan. 22, 2015).

Furthermore, even if price erosion could establish irreparable harm, Defendants' proffered evidence regarding price erosion is merely speculative. Indeed, no economics expert or other expert testimony was presented by any Party at the hearing on the issue of irreparable harm.[6] The evidence identified to the Court on the issue of price erosion consists of the testimony of Mr. Williams and a spreadsheet comparison of Pruvit's KETO//OS pricing and ForeverGreen's KetonX pricing [Dkt. 30-13 at 11, Ex. I]; the evidence presented is insufficient to carry Defendants' burden. *See Wavetronix LLC*, 2015 WL 300726, at *7-8 (finding no irreparable harm because any "future lost sales, price erosion, and eventual excision from the market may be, at least in part, speculative"); *MicroAire Surgical Instruments, LLC v. Arthrex, Inc*., 726 F. Supp. 2d 604, 639-40 (W.D. Va. 2010) (finding no irreparable harm when the movant "offered no evidence or rationale supporting [the contention of price erosion] beyond the baseline economic principle that the introduction of a competitor product in the market will place downward pressure on prices"). Mr. Williams testified that the price erosion harm is simply Defendants' "*opinion*" [Williams Deposition at 134:2-3]. Mr. Williams' mere assertion that Pruvit's production and sale of an allegedly infringing product may lead to price erosion, without

---

[6] The Court notes that Defendants provided one expert declaration in their Motion for Preliminary Injunction, which discusses the patented technology and the contents of the KETO//OS product based on the description on the product's label [Dkt. 30 -1 at 3], but does not address any of the alleged harms argued by Defendants – including price erosion.

more, is insufficient to constitute a finding of irreparable harm.  *See Winter*, 555 U.S. at 22;

*Holland Am. Ins. Co.*, 777 F.2d at 997 (explaining that speculative injury is insufficient to prove

irreparable harm).  Based on the record before the Court, the prospect of price erosion does not

constitute irreparable harm here.

### B.    *Reputational Harm*

Similar to price erosion, while reputational injury[7] can be used to establish irreparable

harm in certain circumstances, "the showing of reputational harm must be concrete and

corroborated, not merely speculative."  *Toxco Inc. v. Chu*, 724 F. Supp. 2d 16, 30 (D.D.C. 2010)

(citing *Trudeau v. Fed. Trade Comm'n,* 384 F. Supp. 2d 281, 297 (D.D.C. 2005)).  Defendants

contend that Pruvit's KETO//OS supplement has negative side effects, such as headaches,

diarrhea, and nervous system issues [Dkt. 30 at 41; Def. PI Hearing Ex. 145, 147, 203].  Because

KETO//OS and KetonX are seen as alternatives, Defendants argue that such side effects are

likely to be attributed to KetonX and/or ketosis supplements generally rather than to isolated

issues with Pruvit's KETO//OS, thereby harming the reputation of ForeverGreen's KetonX

[Dkt. 30 at 41; Def. PI Hearing Ex. 145, 147, 203].  Mr. Williams was questioned by Pruvit at

the evidentiary hearing about the past and/or current negative side effects of KetonX – which are

alleged to include the same or similar effects.  Pruvit argued that its KETO//OS cannot be solely

responsible for any reputational harm, since both products would have the same negative

associations.

Although Defendants have provided ample evidence that Pruvit's KETO//OS has

experienced a number of negative side effects [Def. PI Hearing Ex. 105, 147], Defendants have

failed to demonstrate in any manner that these negative side effects are causing customers to turn

---

[7] The Court uses the terms "reputational harm," "loss of good will," and "reputational injury" interchangeably, as each such term has been used by other courts in discussing harms of a similar nature to that alleged by Defendants herein.

away from KetonX and/or the ketosis supplement market, or that the side effects alleged are not also being experienced during their own testing of KetonX. On the record before the Court, the Court finds that "[i]t is difficult to imagine under what extraordinary set of circumstances the introduction of a product with a 'lower reputation for quality' would, instead of highlighting the higher quality of its competitors, reflect adversely upon the field as a whole." *MicroAire Surgical Instruments, LLC v. Arthrex, Inc.*, 726 F. Supp. 2d 604, 640 (W.D. Va. 2010). Indeed, here, any reputational harm to KetonX remains purely speculative; the number and frequency of any complaints about Pruvit's KETO//OS does not concretely establish that the reputation of KetonX and/or the ketosis supplement market as a whole will be permanently damaged. Particularly not when weighed against the contrasting argument that ForeverGreen is experiencing similar challenges with its KetonX. *See id.*; *Bettcher Industries, Inc.*, 692 F. Supp. 2d at 821 (explaining that because the loss of customer goodwill was speculative this factor weighed in favor of denial of a preliminary injunction). Because speculative injury is insufficient to support a finding of irreparable harm, Defendants have failed to meet their burden to prove that any alleged reputational harm is irreparable absent the issuance of an injunction. *See Winter*, 555 U.S. at 22; *Holland Am. Ins. Co.*, 777 F.2d at 997. Moreover, the Fifth Circuit has held that "[t]he lost goodwill of a business operated over a short period of time is usually compensable in money damages." *DFW Metro Line Services v. Southwestern Bell Telephone Co.*, 901 F.2d 1267 (5th Cir. 1990) (citing *Jack Kahn Music Co., Inc. v. Baldwin Piano & Organ Co.*, 604 F.2d 755, 763 (5th Cir. 1979)). Accordingly, the limited time both products have been on the market (approximately six months) also should be considered. For these reasons, any alleged reputational harm is not irreparable at this juncture.

### C.    Harm to Shareholder Value

ForeverGreen next argues that its shareholder value has decreased due to Pruvit's KETO//OS supplement [Dkt. 30-13 at 15].  Specifically, ForeverGreen contends that, "[a]s a publicly traded company, ForeverGreen relies on consumer confidence to protect the value of its shares...[t]he reputational harms described above not only taint the [ketosis supplement] market as a whole, but they also have a direct negative impact on ForeverGreen's share value" [Dkt. 30 at 41].  The only evidence the Court has identified in support of ForeverGreen's argument is the testimony of Mr. Williams who explained that some people might "call it coincidence but [ForeverGreen's] shareholder value has gone down significantly since [Pruvit began selling KETO//OS]" [Williams Deposition at 113:19-20].  At the evidentiary hearing, Pruvit elicited an admission from Mr. Williams that ForeverGreen's allegedly inferior ketosis supplement product and/or ForeverGreen's loss of millions of dollars in the past nine out of twelve fiscal years could also be the reason and/or reasons for the decrease in ForeverGreen's shareholder value.  The Court agrees with Pruvit based on the record before it; there could be alternative reasons for ForeverGreen's decrease in shareholder value.  It bears repeating yet again that mere speculation is not enough to warrant issuance of the extraordinary remedy of a preliminary injunction.  *See Winter*, 555 U.S. at 22; *Holland Am. Ins. Co.*, 777 F.2d at 997; *Mike's Train House, Inc*., 708 F. Supp. 2d at 532 ("Mere speculation about possible market share losses is insufficient evidence of irreparable harm."); *Z-Man Fishing Products, Inc.*, 790 F. Supp. 2d at 423.  The only causal link ForeverGreen has provided between the decrease in value and Pruvit's KETO//OS launch is the alleged temporal proximity between these two events.  A mere temporal link is not sufficient, especially whereas here, an acknowledged alternative reason(s) for the decrease in value exists – including Mr. Williams' testimony that ForeverGreen has lost millions of dollars nine out of the

past twelve years, which also admittedly could account for any fluctuation in the shareholder value. Accordingly, the decrease in ForeverGreen's shareholder value does not weigh in favor of finding irreparable harm.

### D. Loss of Market Share and Other First to Market Opportunities

ForeverGreen argues that, through its sub-license with Axcess Global [Def. PI Hearing Ex. 18], it is the only company with the patent rights and know-how associated with ketosis supplements and, as such, it should have enjoyed the benefit of being first to market, all the opportunities a first market entrant affords, and ongoing exclusivity [Dkt. 30 at 42]. In the MLM context, Defendants argue that being the first to market is extremely important because a new product launch creates significant interest in the industry and attracts distributors excited to take the new product to market. *Id*. Consequently, the first company to launch enjoys a larger customer and distributor base, and distributors are incentivized to stay with the company because doing so allows them to collect a percentage of the product sales. *Id*. at 42-43 ("Because of the momentum Pruvit gained during [its] initial launch, it is likely that Pruvit will gain additional customers and distributors, who undoubtedly would have joined ForeverGreen had ForeverGreen rightly been first to market and the sole source of [ketosis supplements] in the industry."). Defendants argue that Pruvit, by way of being the first market entrant, caused them not only loss of market share, but additional harm, such as: (1) limiting the supply of raw materials (butyrate salts) necessary to manufacture KetonX; (2) loss of important contacts/distributors in the industry that should have been Defendants' contacts; and (3) deceiving customers into thinking ketosis supplements are of a certain caliber due to false labeling [*see* Def. Closing PowerPoint Slides 124, 126, 127, and 132; Def. PI Hearing Ex. 152, 161, 183, 187; Dkt. 30-5 at 7-8]. The Court is not persuaded that any of these alleged harms rise to the level of irreparable.

### i. *Loss of Market Share*

"Proof of lost market share and lost sales alone are insufficient to establish irreparable harm ...." *FieldTurf USA, Inc.*, 725 F. Supp. 2d at n.3 (citing *Automated Merch. Sys.*, 357 F. App'x at 301); *see also Mike's Train House, Inc.*, 708 F. Supp. 2d at 532 ("Because potential lost sales revenue is compensable through damages, evidence of such losses is insufficient by itself to support a finding of irreparable harm.") (citing *Illinois Tool Works, Inc. v. Grip-Pak, Inc.*, 906 F.2d 679, 683 (Fed. Cir. 1990)). Moreover, "[a]s the Federal Circuit said recently, 'lost market share must be proven (or at least substantiated with some evidence) in order for it to support entry of a preliminary injunction, because granting preliminary injunctions on the basis of speculative loss of market share would result in granting injunctions in every patent case where the patentee practices the invention.'" *Acoustic Processing Technology, Inc. v. KDH Electronic Systems Inc.*, 679 F. Supp. 2d 146, 159 (D. Maine 2010) (citing *Automated Merch. Sys.*, 357 F. App'x at 301). Defendants have not provided such evidence. This Court has nothing more than Mr. Williams and Mr. Millet's statements that, but for Pruvit's KETO//OS, Defendants would be enjoying market exclusivity; neither of which substantiates that Defendants have actually lost ketosis supplement market share due to Pruvit's KETO//OS and/or what percentage of share has been lost [Dkt. 30 at 41-42; Dkt. 30-5 at 7; Dkt. 30-13 at 10, 13]. Further, even if Defendants were able to provide the Court with some evidence of loss of market share – it alone would still likely be insufficient to establish irreparable harm here under applicable law. *See Field Turf USA, Inc.*, 725 F. Supp. 2d at n.3 (citing *Automated Merch. Systems, Inc.*, 357 F. App'x at 301). "[N]either the difficulty of calculating losses in market share, nor speculation that such losses might occur, amount to proof of special circumstances justifying the extraordinary relief of an injunction prior to trial." *Nutrition 21*, 390 F.2d at 871 (citing *Nuclear-Chicago Corp. v.*

*Nuclear Data, Inc.*, 465 F.2d 428 (7th Cir. 1972)). Accordingly, the alleged loss of market share does not weigh in favor of finding irreparable harm.

## ii.    *Loss of Other First to Market Opportunities*

Beyond the alleged loss of market share, the evidence demonstrates that the manufacturer Pruvit obtains its raw materials from is at maximum capacity due to Pruvit's orders [Def. PI Hearing Ex. 183, 201]. Defendants argue this fact demonstrates that they are irreparably harmed because Pruvit has a monopoly on these raw materials. The Court disagrees. Defendants have provided no evidence that the manufacturer Pruvit buys raw materials from is the only supplier of such materials.[8]

Furthermore, the "loss of distributor/contacts evidence" does not suggest that Pruvit is to blame for any loss in distributors ForeverGreen is experiencing [*see* Dkt. 30-13 at 11; Def. Closing PowerPoint Slide 128]. In Mr. Williams' declaration, he states that ForeverGreen has lost at least two distributors, Billy Funk and Ray Dietrich, to Pruvit since the KETO//OS launch [Dkt. 30-13 at 11]. In addition to this declaration, Defendants provide an email from a ForeverGreen distributor to Pruvit requesting the KETO//OS product (instead of KetonX) because he "continue[d] to pay and pay and pay [ForeverGreen] and sell and sell and sell [KetonX] but [couldn't] seem to get any product actually shipped to [him]" [Def. Closing PowerPoint Slide 128; *see also* Def. PI Hearing Ex. 160]. This email does not demonstrate that Pruvit is to blame for the loss of ForeverGreen's distributor; to the contrary, it demonstrates that ForeverGreen lost this distributor after the distributor paid for ForeverGreen's KetonX product, but it was never delivered. Thus, ForeverGreen has failed to present evidence that any loss of distributors is solely or primarily attributable to Pruvit.

---

[8] Mr. LaCore's deposition testimony indicates that butyrate salts are harder to find compared with the other ingredients in KETO//OS, but he is unaware of any limited supply of butyrate salts in 2015 [LaCore Deposition 76:6-25].

Likewise, Defendants also offered no evidence that any deception related to Pruvit's labeling of KETO//OS has turned customers away from the ketosis supplement market as a whole. Again, mere speculation is not enough to warrant a preliminary injunction. *See Winter*, 555 U.S. at 22; *Holland Am. Ins. Co.*, 777 F.2d at 997; *Mike's Train House, Inc.*, 708 F. Supp. 2d at 532 ("Mere speculation about possible market share losses is insufficient evidence of irreparable harm."); *Z-Man Fishing Products, Inc.*, 790 F. Supp. 2d at 423.

As with the other alleged harms, Defendants have failed to demonstrate that monetary damages are insufficient to make them whole with regard to any loss of market share and/or loss of first to market opportunities they have experienced. The alleged harms due to loss of important contacts in the industry, loss of supply component manufacturers, and deceiving customers about the caliber of ketosis supplements are simply too speculative to justify a grant of the extraordinary remedy of injunctive relief. "[T]he threat of loss of prospective customers, goodwill, or reputation may support a finding of irreparable harm, *so long as it is not too speculative*." *Gowan Co., LLC v. Aceto Agric. Chems.*, No 09-CV-1124, 2009 WL 2028387, at *5 (D. Ariz. July 10, 2009) (citing *Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991)) (emphasis added). Accordingly, any losses of first to market opportunities here do not weigh in favor of finding irreparable harm.

### E. Future Lost Profits

Defendants also argue that they "are likely to suffer future losses as a direct result of Pruvit's ongoing sales of KETO//OS" [Dkt. 30 at 44]. Defendants contend that, if an injunction is not ordered, they will be losing out on at least $36.5 million annually. *Id*. at 45. Pruvit counters that any damages owed to Defendants, by Defendants own admission/assertion, are "readily quantifiable" and that "Pruvit continues to set aside the royalties due under the [Pruvit]

Sub-License that will be payable [to Axcess Global] upon the resolution of this matter" [Dkt. 64 at 28]. Furthermore, as the Court previously noted, there is no dispute between the Parties that the sales figures of KETO//OS are known or are otherwise readily ascertainable [Def. PI Hearing Ex. 139]. "Because potential lost sales revenue is compensable through damages, evidence of such losses is insufficient by itself to support a finding of irreparable harm." *Mike's Train House, Inc.*, 708 F. Supp. 2d at 532 (citing *Illinois Tool Works, Inc.*, 906 F.2d at 683). Thus, this alleged harm does not weigh in favor of granting Defendants' Motion for Preliminary Injunction.

### F. *Loss of the Right to Exclude*

Defendants contend that they have lost, not only market exclusivity, but also the right to exclude others from using the patented technology [Dkt. 30 at 39, 41; Def. Closing PowerPoint Slide 117-18]. However, the Federal Circuit has made it clear that the right to exclude under the patent laws, alone, does not establish irreparable harm. *See Caldwell Mfg. Co. North America*, 2011 WL 3555833, at *3 (citing *Nutrition 21,* 930 F.2d at 871-72). "Although a patent owner seeking a preliminary injunction may claim irreparable harm due to the fact that the right to exclude others from use of the invention is lost if the alleged infringement is allowed to continue, the Federal Circuit has clearly stated that there is no presumption in a patent case that monetary damages will not adequately compensate the patent holder." *Id.* The Court also notes that Axcess Global, at least initially, voluntarily entered into the Pruvit Sub-License agreement, and while its willingness to license the patented technology to Pruvit or any other company does not necessarily preclude injunctive relief, *eBay*, 574 U.S. at 393, it suggests that any injury to Axcess Global "would be compensable in damages assessed as part of the final judgment in the case." *High Tech Med. Instr. v. New Image Indus.*, 49 F.3d 1551, 1557 (Fed. Cir. 1995) (citing *T.J. Smith & Nephew Ltd. v. Consolidated Medical Equip., Inc.*, 821 F.2d 646, 648 (Fed. Cir. 1987)).

Thus, the right to exclude does not constitute irreparable harm in this case because there is no presumption that monetary damages are inadequate to compensate Defendants, and, further, Axcess Global's willingness to license the asserted patents suggests that any future damages could be calculated.

### G.     Other Factors

Pruvit contends that Defendants' delay in seeking injunctive relief – almost five months after Pruvit went to market – weighs in favor of the Court's denial of the Motion for Preliminary Injunction [Dkt. 63 at 26].   A nonmoving party may rebut a claim of irreparable harm by demonstrating that the moving party unreasonably delayed seeking a preliminary injunction. *Pfizer, Inc. v. Teva Pharmaceuticals, USA, Inc.*, 429 F.3d 1364, 1381-82 (Fed. Cir. 2005) (noting that delay generally "negates the idea of irreparability"); *Bushnell Inc. v. Brunton Co.*, 673 F. Supp. 2d 1241, 1264 (D. Kan. 2009).   Delay has been described as "a single factor in the irreparable-harm balancing inquiry."   *Advanced Commc'n Design, Inc. v. Premier Retail Networks, Inc.*, 46 F. App'x 964, 984 (Fed. Cir. 2002).

Pruvit has been selling KETO//OS since May 12, 2015, and ForeverGreen has been selling KetonX since July 2015 [Dkt. 30 at 9; Dkt. 64 at 26].   Pruvit filed its Complaint on August 24, 2015 [Dkt. 1], and Defendants filed their Motion for Preliminary Injunction on October 26, 2015 [Dkt. 30 at 9].   Approximately five months have elapsed from Pruvit's launch of KETO//OS to the date Defendants filed their Motion for Preliminary Injunction.   Defendants argue that there has been no delay – that Defendants wanted to explore the possibility of resolving the dispute through settlement or other means and also to confirm that Pruvit breached the Sub-License before seeking an injunction.   Courts have found, under similar circumstances, that the expiration of five months or similar timeframe should factor into the court's analysis and

could serve to rebut a claim of irreparable harm. *H.D. Vest, Inc. v. H.D. Vest Management and Services, LLC*, No. 3:09-CV-390-L, 2009 WL 1766095, at *4 (N.D. Tex. June 23, 2009) (holding, in a trademark infringement suit, that movant's almost five month delay in seeking injunctive relief was sufficient to rebut a presumption of irreparable harm); *Precision Links Inc. v. USA Products Group, Inc*., No. 3:08-CV-576, 2009 WL 3076114, at *8 (W.D.N.C. Sept. 22, 2009) (holding that there was a lack of irreparable harm when a patentee waited over five months after filing its complaint to seek injunctive relief); *Boire v. Pilot Freight Carriers, Inc*., 515 F.2d 1185, 1193 (5th Cir. 1975) (affirming the district court's denial of temporary injunctive relief where movant, among other things, delayed three months in making the request). Defendants admittedly have known of Pruvit's launch of its KETO//OS product since, at least, May 12, 2015 [Dkt. 30 at 9]. Although Defendants contend that there was no delay because they were attempting to reach an agreement on the Pruvit Sub-License and/or determine their rights with regard to the Pruvit Sub-License, the Court does not find this argument persuasive. If the alleged harms to Defendants' ketosis supplement business are indeed as detrimental as Defendants assert, Defendants would have sought injunctive relief as soon as practicable after Pruvit's launch of KETO//OS. Moreover, another fact to be considered in connection with delay is that Pruvit initiated the present action – not Defendants [Dkt. 1]. And Defendants did not file their Motion for Preliminary Injunction until October 26, 2015 [Dkt. 30] – two months after Pruvit filed its Complaint. While delay may not be dispositive, in the present case, it supports a lack of urgency and irreparable harm, and ultimately weighs heavily against granting injunctive relief.

### H. Summary

In summary, Pruvit contends that an adequate remedy at law exists in this case because monetary damages are "readily quantifiable" and delay rebuts any irreparable harm argument [Dkt. 64 at 27]; the Court agrees. "[T]here can be no irreparable injury where money damages would adequately compensate a [movant]." *DFW Metro Line Services*, 901 F. 2d at 1269 (citing *Spiegel v. City of Houston*, 636 F.2d 997, 1001 (5th Cir. 1981)). Furthermore, "[a] finding that the patentee delayed in seeking a preliminary injunction strongly suggests that the patentee does not face irreparable harm." *Bushnell, Inc.*, 673 F. Supp. 2d at 1264 (citing *Reebok Int'l, Ltd. v. J. Baker, Inc.*, 32 F.3d 1552, 1557-59 (Fed. Cir. 1994)). Even taking all of Defendants' alleged harms in the aggregate, Defendants have provided only speculative evidence as to their alleged irreparable harm, and have not demonstrated why monetary damages would not be an adequate remedy in this case. Ultimately, Defendants have failed to carry their burden of showing irreparable harm. Indeed, other cases finding a threat of irreparable harm offer significantly more substantial, objective evidence of irreparable harm. *See e.g., Purdue Pharma*, 237 F.3d at 1368 (referencing the defendant's challenge to the plaintiff's economics expert's testimony regarding price erosion and loss of market position); *see also Travel Tags, Inc.,* 690 F. Supp. 2d at 801-02 (explaining that two declarations – one from the inventor of the patents-in-suit and the other from the general manager of the movant company – are inadequate to satisfy the movant's burden of showing irreparable harm). Any alleged harmed suffered by Defendants, and allegedly caused by Pruvit's continued use of the `356 Vlahakos Patent, the `420 USF Patent, and any related know-how during the pendency of this case, can be remedied by an award of monetary damages.[9] The irreparable harm prong does not weigh in Defendants' favor, and this

---

[9] This ruling, however, does not foreclose the possibility of a permanent injunction in the event Defendants prevail at trial. The Court does not reach that question at this time.

alone demands the denial of Defendants' request for preliminary injunctive relief.  *See Polymer Techs., Inc. v. Bridwell,* 103 F.3d 970, 973–74 (Fed. Cir. 1996).

### III.     *Balance of the Equities and Public Interest*

Because Defendants have failed to carry their burden of showing irreparable harm in the absence of a preliminary injunction, the Court need not address the remaining preliminary injunction factors.  *Polymer Techs.,* 103 F.3d at 973–74 ("[A] trial court need not make findings concerning the third and fourth factors if the moving party fails to establish either of the first two factors."); *see also McDavid Knee Guard, Inc. v. Nike USA, Inc.,* 683 F. Supp. 2d 740, 744 (N.D. Ill. 2010) ("If the moving party fails to demonstrate either [likelihood of success or irreparable harm], then a district court considering a motion for preliminary injunction need not proceed further with its analysis to deny the preliminary injunction motion.") (citing *Abbott Labs. v. Sandoz, Inc.,* 544 F.3d 1341, 1366-67 (Fed. Cir. 2008)); *Cordis Corp. v. Boston Scientific Corp.,* 99 F. App'x 928, 933-34 (Fed. Cir. 2004) (holding that patentee was not entitled to a preliminary injunction because there was no showing of irreparable harm, notwithstanding a showing of likelihood of success on the merits).  Thus, the Court does not address these factors and finds Defendants are not entitled to injunctive relief.

### CONCLUSION AND RECOMMENDATION

Despite assuming *arguendo* that Defendants demonstrated a likelihood of success on the merits, Defendants have failed to meet their burden to show irreparable harm will result absent a preliminary injunction.  Accordingly, the Court finds such injunctive relief is not warranted at present.  For the foregoing reasons, the Court recommends that Defendants Axcess Global and ForeverGreen International LLC's request for preliminary injunctive relief set forth in their

Emergency Motion for Temporary Restraining Order, Expedited Discovery, and Preliminary Injunction [Dkt. 30] be **DENIED**.

Within fourteen (14) days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**SIGNED this 23rd day of December, 2015.**

_____
Christine A. Nowak
UNITED STATES MAGISTRATE JUDGE